# CHARLESTON.

TAYLOR *et al.* v. TAYLOR, ADM'R *et al.*

Submitted February 23, 1909.   Decided November 16, 1909.

1.   STATUTES—*Construction.*
  A statute, limiting a thing to be done in a particular manner, or by a prescribed person or tribunal, implies that it shall not be done otherwise, nor by a different person or tribunal. *Expressio unius est exclusio alterius.* (p. 242).

2.   EXECUTORS AND ADMINISTRATORS—*Bonds—Substitution—Release of Old Bond.*
  As section 10 of chapter 87, section 3302, Code 1906, devolves upon the county court the duty and power of requiring and taking new or substitute bonds from fiduciaries, effecting by force of the provisions of section 11 of said chapter, the release of a bond antecedently given by such fiduciary, the clerk of said court, not being expressly authorized by law to take such new or substitute bonds, has no power to effect such release by accepting a new bond. (p. 242).

3.   SAME—*Release of Surety.*
  A surety in a fiduciary's bond, desiring to be released therefrom, upon his own motion, can obtain such relief only by strict compliance with the statutory provisions, prescribing the mode of procuring such release   (p. 243).

4.   SAME—*Surcharging Settlements.*
  An attack, by appropriate and sufficient allegations, upon an allowance to an administrator, in his *ex parte* settlement, of commission to which he is not entitled, according to the allegations of the bill, is a sufficient specification of an improper charge against the estate, in a bill to surcharge and falsify such settlement. (p. 244).

5.   SAME—*Settlement of Account—Allowance of Commission.*
  Though there may be discretion in a court of equity to allow commission to a fiduciary in his settlement, when he has failed to make it, or render a statement of the money in his hands to the parties entitled thereto, or lay his accounts before a commissioner in a pending suit, within the time prescribed by section 7 of chapter 87, section 3299, Code 1906, a question not here decided, it is error to allow commission, under such circumstances, in the absence of any fact, disclosed by the record, that could call upon the court for the exercise of such discretionary power.   (p. 244).

6.   SAME—*Settlement—Interest on Fund.*

It is not improper to charge interest on a fund in the hands of an administrator, from the date of his *ex parte* settlement made more than two years after his appointment and the appraisement of the estate, showing by far the greater part thereof to have been in his hands in the form of money and notes within a few days after his appointment, although the report of the commissioner in the cause states that the administrator received the fund with which he is chargeable "as of" the date of the *ex parte* settlement. (p. 244).

Appeal from Circuit Court, Calhoun County.

Bill by Lona Dell Taylor and others against Amnon Taylor, administrator, and others. Decree for plaintiffs, and defendant Central Banking & Trust Company appeals.

*Modified and Affirmed.*

*Merrick & Smith,* for appellant.

*Van Winkle & Ambler,* for appellee United State Fidelity & Guaranty Co. *Mathews & Bell,* for appellees Lona Dell Taylor and others.

POFFENBARGER, JUDGE:

In February, 1903, Tasriel Taylor of Calhoun county died intestate, leaving several heirs and a considerable personal estate. A few days afterwards, Amnon Taylor, the oldest son, was appointed administrator of the estate and gave a $6,000.00 bond, as such, in which the Central Banking and Trust Company, the appellant here, was surety. On the 29th day of July, 1904, he appeared before the clerk of the county court of said county, in the recess of the court, and tendered another bond for a like amount, as such administrator, in which the United States Fidelity and Guaranty Company was the surety. On the 28th day of July, 1905, he again appeared before said clerk, in the recess of the court, and tendered a third administration bond for the same sum, in which the Citizens Trust and Guaranty Company of West Virginia was the surety. All of these bonds were accepted by said clerk, and his action, in so doing, was later confirmed by the court, but not, in the case of said last named bond, until after this suit had been brought, nor until April, 1906. The giving of the second bond was occasioned by a demand for release, made by the surety in the first, the law

having been so amended as to prohibit it from transacting surety and guaranty business in connection with its banking business. The third seems to have resulted from competition in the surety business, but recites on its face that it was given in lieu of the second and for the purpose of releasing it. No doubt each subsequently executed bond was intended to be a substitute for its immediate predecessor.

The administrator having failed to file an inventory of the estate and also to settle his accounts, within the time prescribed by law, but having made an *ex parte* settlement at a later date, which is said to be incorrect, but shows indebtedness to the distributees, amounting to $2,728.77, three of the infant children of the decedent, suing by their next friend, instituted this suit to obtain a discovery of assets, surcharge and falsify the settlement and compel payment of their distributive shares of the estate. The sureties in all the bonds were made parties defendant, but the bill was dismissed on demurrer, as to the United States Fidelity and Guaranty Company and the Citizens Trust and Guaranty Company, the sureties in the last two bonds, and a decree was pronounced, fixing the liability at the sum of $3,035.60, and requiring the administrator and the surety in said first bond to pay to each of the plaintiffs the sum of $505.93, one-sixth of the total amount, these constituting the total actual liability, since the other three heirs had received their shares. The surety appeals, assigning several errors, going to the question of liability, sufficiency of the bill in respect to pleading, rulings on exceptions to the commissioner's report and other matters, and the appellees cross-assign errors, relating to charges and credits in the account as reported.

The answer of the Central Banking and Trust Company set up all the facts hereinbefore stated, and claimed to have been released from liability on the bond by reason thereof, but did not assert any claim to cross relief against the sureties on the other two bonds or either of them. In other words, the answer is one purely defensive to the bill, and the questions, raised by it, are, for the most part, legal in their nature. They involve the powers and duties of the clerk of the county court and the force and effect of his acts done in vacation. They also necessitate an inquiry as to the meaning and construction of the statutory provisions relating to bonds given by fiduciaries. Section 1

of chapter 118, section 3752, Code of 1906, authorizes the clerk of any county court to appoint appraisers of decedents' estates, admit wills to record, appoint and qualify executors, administrators, guardians, curators and committees, and require and take from them the necessary bonds, during the recess of the regular sessions of the county court, in the same manner and with like effect, for the time being, as the county court could do, if in session. The only express limitation, imposed upon these powers, is that no contest, as to such probate or appointment, shall be heard or determined by the clerk. Section 2 of the same chapter requires the clerk to report, to the next regular session of his court, the probate of every will and the appointment of every appraiser, executor, administrator, guardian, curator and committee, so made by him, and it is made the duty of the court to confirm the same, if no objections thereto are made. Section 1 of chapter 87, section 3293, Code of 1906, requires said clerk to keep a record of personal representatives, guardians, curators and committees, showing in separate columns the name of every such fiduciary, the name of the decedent for whose estate he is representative, the names of the distributees, the name of the living person for whom he is guardian, curator or committee, the names of his sureties, the date of the order conferring his authority, and, in case of the revocation of such authority, this fact and the date thereof This section requires the clerk, at the time of making such entry as to any fiduciary, to examine whether he has given such bond as the law requires, and, if it appears that he has given no bond, or that his bond is insufficient, to make report thereof to his next court. Section 9 of the same chapter requires the commissioner, before whom any fiduciary has laid a statement of his accounts, to inquire whether he has given bond as the law requires and whether it is in a penalty, and with sureties, sufficient, and to report the result of such examination and inquiry to the court by which he was appointed. Section 10 of that chapter empowers that court to require the fiduciary to give a new bond, if it appears proper to do so from the report of the clerk or the commissioner, or evidence adduced by a surety or the representative of a surety for such fiduciary, or by any other person interested. When such bond is given under the order of the court, it relates back to the time of the qualification of the fiduciary and binds the obligors therein as effect-

ually as if it had been then executed, and this, without any express provision therein to that effect, and thereupon the sureties in the former bond and their representatives are forthwith discharged from all liability, except as to any matter for which a suit may be then pending on the former bond, and, in the case of the pendency of such suit, it may be prosecuted to judgment or decree, but, as to every such matter, the new bond, without any express provision therein to that effect, binds the obligors therein to indemnify the sureties in the former bond against all loss or damage in consequence of executing the former bond.

The vital inquiry here is whether the act of the clerk, done in the recess of the court, and afterwards approved and confirmed by the court, released the surety in the first bond, rather than whether a new bond, so taken and approved, binds the obligors therein. Such new bond may be absolutely good and yet not constitute, in law, a substitute for the old one or work a release thereof. Section 10 of chapter 87 seems to be the only provision in our statute, authorizing the release of a surety or substitution of a new bond for an old one, at the instance of a surety. This section says the court may, when it appears proper, "on evidence adduced by a surety or the representative of a surety for such fiduciary * * order him to give before such court a new bond within a prescribed reasonable time, in such penalty, and with or without sureties, as may appear proper, and may, if such order be not complied with, or whenever from any cause it appears proper, revoke and annul his powers." The effect of such bond, when given, is prescribed by the next section. No provision, expressly authorizing the clerk to require a new bond or release a surety, can be found in the statute. His authority to take bonds is conferred in connection with the appointment of fiduciaries, and, while there is no limitation upon his powers in respect to the jurisdiction conferred upon him in the recess of the court, except that he shall hear no contest, the provision authorizing him to take bonds must be read, considered and interpreted in the light of that other statutory provision which vests the jurisdiction to take new bonds, releasing old ones, in the court, and not in the clerk. Devolution of this power upon the court negatives intention to allow it to be used elsewhere or by any other tribunal

or person. *Expressio unius est exclusio alterius.* Note, in this connection, that, while the failure of a fiduciary to give a bond, or the insufficiency of the bond given, must or may come to the attention of the clerk, in legislative contemplation, he is nevertheless authorized, in that event, to do nothing more than report the fact to the court as a basis for its action. We think these statutory terms and provisions, thus brought into relation, unaided by any argument or discussion, make plain the legislative intent to confer upon the clerk only power to take a fiduciary bond in the first instance, and to withhold from him both the power to take and to require a new bond so as to make it a substitute for one already given so as to work a release thereof, and also authority to revoke powers already conferred. "The statutory method for the release of an existing surety on a guardian's bond by the substitution of a new one must be strictly pursued; otherwise the new bond is merely cumulative and the old sureties remain bound." Brandt on Suretyship & Guaranty, section 707. This text is sustained by numerous decisions, among which are *Elbert* v. *Jacoby,* 8 Bush. (Ky.) 543; *Jones* v. *Hays,* 38 N. C. 502 (44 Am. Dec. 78); *People* v. *Brown,* 23 Col. 425. To the same effect see 27 A. & E. Enc. Law 536. The decisions in *Perry* v. *Campbell,* 10 W. Va. 228, and *Bruce* v. *Bickerton,* 18 W. Va. 342. neither conflict with this view nor justify, as precedents, a different interpretation or conclusion. In the first, the new bond was required by the county court, on the motion of a surety, under the provisions of chapter 132 of the Code of 1849; and, in the second, it was required by the recorder of the county, in strict conformity, for all we can see, with the provisions of chapter 87 of the Code of 1868, vesting wide probate jurisdiction in that officer. Nor is a different principle asserted in *Sayers* v. *Cassell,* 23 Grat. 525, or *Lingle* v. *Cook,* 32 Grat. 262. In both, the new bonds were given before courts having express statutory jurisdiction to take them as substitute bonds. The irregularity in the taking of the new bonds may not invalidate them as statutory bonds, and, if it does, they may be good as common law bonds, but they are clearly not substitute bonds, releasing or discharging bonds antecedently given, such as are contemplated by sections 9, 10 and 11 of chapter 87. Further than this, we decide nothing in the present state of the case.

A further charge against the bill is lack of specification of any item as having been improperly omitted from the debit side of the account, or allowed on the credit side thereof. A bill filed only to surcharge and falsify a stated account must specify one or more of such items. *Seabright* v. *Seabright,* 28 W. Va. 412. We think the challenge of the allowance of commissions to the administrator, amounting to $176.80, brings the case within this requirement of the rule. The bill avers the appointment of the administrator on the 21st day of February, 1903, and says no settlement was made by him until the 23rd day of October, 1905, more than two years after the date of his appointment, and nothing appears on the face of the bill by which the administrator could bring himself within any exception made by the statute or prescribed by any rule of court, in respect to the allowance of compensation. The settlement, as made, was *prima facie* correct, by force of the statute, and this alleged improper charge upon the estate constituted ground for equity jurisdiction.

Right to discovery, predicated on the failure of the administrator to file an inventory within the time prescribed by law, is urged as a ground of jurisdiction, but, in view of the settlement, made before the institution of the suit, this ground of jurisdiction may have failed Whether the position is tenable or not, it is unnecessary to say, inasmuch as there is jurisdiction upon the ground already stated.

The action of the court in overruling an exception to the report of the commissioner, in respect to the allowance of interest from the 18th day of June, 1905, on the balance then due from the administrator, is complained of in the assignments of error. The exception says the funds came into the hands of the administrator on that day and he should have been allowed a year in which to invest the same. Nothing in the record sustains this assertion. The commissioner, before whom the administrator made his settlement, shows by his report that there was then in his hands, or rather that he was then liable to the estate for, said sum. As he had been appointed almost two years before the date of this settlement, and the appraisement of the estate, made immediately after his appointment, a copy of which is exhibited with the bill, shows there were then money of the estate amounting to $3,233.83 and notes amount-

ing to $978.02, it is almost certain that the money came into his hands long before the date of the settlement, June 18, 1905. Although the report says the administrator "received the said sum of $5,893.19 as of January 18, 1905," the evidence, returned with it, shows the contrary. Read in the light of the evidence, this must be interpreted as meaning only that the commissioner treated it as having been then received. It does not say the fund was received on the day named, but as of that day. Reversal must be justified by error, affirmatively shown by the record. In this instance all the visible evidence tends to sustain the decree, wherefore we perceive no reason for disturbing it as to this matter.

Exception No. 3 sets up want of jurisdiction in the court. This is without merit, as we have shown. Exception No. 4 goes to the sufficiency of the commissioner's notice and the publication and posting thereof. There is no specification of any defect, and we see none.

The cross-assignment of error goes to the allowance of commission on the entire amount of the estate. This having been disallowed by the commissioner, and the surety having excepted to his action in so doing, the court sustained the exception. By express statutory provision, a fiduciary loses his commission for failure to make his settlement within the prescribed time, unless, within such time, he shall have rendered to the parties entitled, to the money in his hands, a statement thereof and actually settled therefor, or laid a statement of his receipts before a commissioner in a pending suit, authorized to settle his accounts. The administrator's answer attempts to excuse the failure in question by showing he had seasonably laid his accounts before a commissioner who was then sick and later died without having reported the settlement; but a general replication was filed, calling for proof of the averment, which was not furnished, although Taylor was examined as a witness, and it appears he could have proved the averment, if true, by another witness. But he adduced no evidence at all to sustain it. Proof of this part of the answer might have sufficed. *Lovett* v. *Thomas,* 81 Va. 245; *Trevelyan* v. *Lofft,* 83 Va. 141; *Brent* v. *Clevinger,* 78 Va. 12; *Boyd* v. *Boyd,* 3 Grat. 112; *Kee* v. *Kee,* 2 Grat. 116. If the court has any discretionary power in such cases, some facts must be disclosed, calling for the exercise thereof. It cannot

.be an arbitrary discretion. Nothing, upon which the court could have based this ruling, has been discovered, unless it be the commissioner's statement that the administrator received the fund "as of January 18, 1905," which we have already interpreted and disposed of. In sustaining this exception, the court erred and the decree must be modified so as to require payment to each of the plaintiffs an additional amount, equal to one-sixth of the commission allowed, $294.66, namely, $49.11, which, added to the sum decreed, makes $555.04.

No other error being perceived, the decree, as so modified, will be affirmed with costs and damages according to law.

*Modified and Affirmed.*