IN RE ESTATE OF THOMAS H. DONLON.

**EXECUTORS AND ADMINISTRATORS:** Appointment—Ex-parte Revocation—Effect. A peremptory, ex-parte court order to the effect that the appointment of an administrator is revoked, and the simultaneous reappointment of the same administrator, and the execution of another bond, do not effect a legal revocation, and consequently do not operate as a discharge of the bond given pursuant to the original appointment.

**PRINCIPAL AND SURETY:** Co-sureties—Obligations Constituting. When an administrator gives bond on his original appointment, and later is ineffectually discharged, and at once reappointed, and gives a new bond, the two bonds will be treated as cumulative, and the sureties thereon as co-sureties, with the sole right in each to enforce proportional contribution from the other.

**EXECUTORS AND ADMINISTRATORS:** Bonds—Liability—Devastavits. A claim of devastavit will not be deemed established on the mere showing that an administrator, upon making a collection on behalf of the estate, gave the estate his promissory note therefor.

**EXECUTORS AND ADMINISTRATORS:** Bonds—Liability—Presentable Issues. In a controversy *solely* between an administrator and his bondsmen, the court will not, on the issue of a bondsman's liability, determine whether there has been a binding settlement between the administrator and an heir.

Headnote 1:  24 C. J. p. 1070 (Anno.)  Headnote 2:  24 C. J. pp. 1061, 1071.  Headnote 3:  24 C. J. p. 120.  Headnote 4:  24 C. J. p. 1107 (Anno.)

Headnote 3:  11 R. C. L. 173.

*Appeal from Clayton District Court.*—JAMES D. COONEY, Judge.

MAY 10, 1927.

Application in probate for a judgment against the sureties on two bonds given successively in the administration of the same estate. Judgment was rendered against the sureties, and they appeal.—*Modified and affirmed.*

*Alex Holmes,* for W. J. Kelly, appellant.

*Miller, Kelly, Shuttleworth & McManus,* for United States Fidelity & Guaranty Company, appellant.

*V. T. Price,* for J. F. Kelly, appellee.

*E. H. Estey* and *D. W. Meier,* for D. W. Meier, Administrator, Mary Donlon, Thomas, Joseph, and Robert Donlon, and J. F. Uriell, Guardian, appellees.

MORLING, J.—The first question is whether an ex-parte order purporting to revoke letters of administration, the simultaneous reappointment of the same administrator, and the execution of another bond, operated as a discharge of the bond given pursuant to the first appointment.

Thomas H. Donlon died November 23, 1920, leaving a widow and three minor children. On the petition of the widow, dated November 29, 1920, J. F. Kelly was appointed administrator. He gave bond for $10,000, with appellant W. J. Kelly as surety. The bond was approved and letters issued November 29, 1920. On December 23, 1920, the administrator filed an inventory "of all the personal estate of the said deceased, so far as the same has come to the possession or knowledge of the undersigned J. F. Kelly," listing some $30,000 of promissory notes executed by others, and upwards of $20,000 of notes executed by the administrator, $5,353.75 in cash, and $2,000 in bank stock. The administrator's attorney, Mr. Murphy, testifies that he called the administrator's attention to the fact that he had an insufficient bond, and "told him that I thought the best thing to do was to have his appointment revoked, and give an indemnifying bond of sufficient amount; and that met with his approval, * * * I called the court's attention to the fact that the probate record showed a disparity of the bond here, and asked the court to revoke the appointment, and told him that the administrator would, on the petition of the widow, be reappointed; whereupon

1. EXECUTORS AND ADMINISTRATORS: appointment: ex-parte revocation: effect.

the court entered the order.'' The record shows that, on February 24, 1921, a petition by the widow and Kelly, the administrator, was filed, praying for the appointment of Kelly as administrator. On February 25, 1921, an order was made ''that the appointment of administrator be, and the same is, hereby revoked, and administrator discharged, upon turning over all property in his hands to the duly appointed and qualified administrator.'' On the same day, an order was made appointing J. F. Kelly administrator, ''and surety bond fixed in the sum of $75,000.'' On March 14, 1921, a bond with the appellant United States Fidelity & Guaranty Company as surety, in the penalty of $75,000, was filed and approved, and letters of administration to J. F. Kelly were issued, and notice of appointment given the same day. On March 17, 1921, the administrator filed an inventory, the same as the former one, except that, in place of the cash, $5,353.75, it showed J. F. Kelly's note for that amount, dated December 16, 1920. The first report appears to have been filed on March 21, 1922. This report says that all of the notes were investments made by decedent prior to his death, except note for $5,353.75, ''which was given by your administrator after the death of said decedent, for moneys he collected from banks in Chicago, Illinois. That all of said property invested is invested in the state of South Dakota, and that at this time it is impossible for anyone to secure money in the state of South Dakota for the purpose of the liquidation of the notes held by this estate. That the moneys which are invested and secured by real estate mortgages are, in the judgment of your administrator, safe * * * Your administrator further represents that he has property sufficient to liquidate his indebtedness to this estate, but that he also at the present time is unable to raise cash money, in order to pay said notes and the money owing this estate. That your administrator has filed a surety bond in the sum of $75,000, which is holding for his faithful performance of the duties as administrator in this estate. In the judgment of your administrator, it would be unwise to force a collection of any of these notes or accounts due the estate; for it would result in great hardship to the persons owing, and also might cause a loss to the estate, in that it might force insolvencies, in cases where, if time were given, the debtor would be able to pay out in full.'' On October 19, 1923, the administrator filed a report stating that

all of the funds except that which had been paid remained invested in the same condition as at the time administration was taken out; that conditions in Dakota were such that it was impossible for anyone to secure money, even though he had ample security; "that there is ample security for all the loans which have been made; and that those loans which he [administrator] is personally owing in the estate are secured by property which he has still in his possession. That it is absolutely impossible for the administrator to hurry payment of this indebtedness, but all creditors of this estate are making every sincere effort to secure loans." On December 5, 1923, the surety United States Fidelity & Guaranty Company, which will be referred to as "the Guaranty Company," filed a petition for the removal of the administrator, reciting the two appointments, and the revocation of the first, asserting the invalidity of the revocation, the conversion of the $5,353.75, and the procurement of the bond from it by false representations. This petition also alleged that the administrator had failed to pay interest on his indebtedness to the estate, "notwithstanding the fact that, in August, 1923, he borrowed the sum of $33,000 on his real estate in South Dakota, and used said funds to pay and prefer other creditors. He has appropriated to his own use money coming into his hands as administrator." This application sought to have the assets distributed among the heirs in kind. On December 15, 1923, the administrator filed a final report, setting up his appointment on November 29, 1920, the giving of the $10,000 bond, and "that thereupon your petitioner took possession of and sequestered the assets of said estate wherever found, and brought the same within the jurisdiction of this court, and on February 25, 1921, the court upon its own motion revoked the letters of administration theretofore issued, and on the same day the court, upon the new petition of Mary Donlon, surviving spouse, did appoint your petitioner, J. F. Kelly, as administrator of said estate, whereupon he filed bond with the United States Fidelity & Guaranty Company" as surety, in the sum of $75,000, and letters were issued to him. This report asked to have a distribution made in kind. It listed as assets various notes at their present worth, including his own, stated to be: "Total value notes $38,645.62." The guardian of the minor children filed objections to this report. While ex-parte orders were entered May 11, 1922, and

October 19, 1923, on the intermediate reports above referred to, the first order or judgment on a hearing of the parties interested was made February 2, 1924. This order recited appearance for the administrator, for the minor heirs, and for the Guaranty Company, and hearing on the final report and objections and petition for removal. It adjudged the liability of J. F. Kelly to be $40,001.17, it removed Kelly, appointed Meier as his successor, fixed his bond at $50,000, and ordered Kelly to turn over to Meier "the said amount of his personal liability to the estate and all other property of the estate." Further details of these proceedings are set out in *In re Estate of Donlon*, 201 Iowa 1021.

I. No cause was shown for revocation of the first letters. No notice of application therefor was given. Though the administrator had taken possession of the assets, no accounting was asked or made. There was no hearing thereon. The surety on the first bond, W. J. Kelly, made no application for a release, and was not, separately from his principal, a party to any proceeding until the application now under review, made March 14, 1924, was filed. Nothing took place, so far as appears, between him and the Guaranty Company or anyone else, looking toward his discharge. He was undoubtedly liable to the amount of his bond for an accounting for the property of the estate, all of which, before the second appointment, had come into the administrator's possession. The only method of relief available to him was that provided by Section 1177-b *et seq.*, Code Supplement, 1913. Before he could be released, it would be necessary for the administrator to make settlement. The statute makes provision for removal (Code of 1897, Section 3416 *et seq.*), but none in terms for revocation of letters. We shall not undertake to discuss the authority of the court in proper proceedings to revoke letters of administration. See 24 Corpus Juris 1070 *et seq.* It is obvious that there was not, in law or fact, any revocation. Kelly was administrator. Kelly petitioned for the second appointment. Kelly took possession of the property in his first appointment, and has never relinquished possession to any other administrator. Kelly, under the supervision and control of the court, from first to last, carried on a single, unbroken possession and administration. See *Crossman v. McCrary*, 37 Iowa 684. The only reason for the proceeding that was taken was the inadequacy of the $10,000 bond. By Section 3302, Code of 1897,

a new bond might be required, in a new penalty, with new securities, when found necessary. The first bond is clearly in full force. Both bonds are for the faithful performance of the same duties by the same person. On the record, the second bond is not a substitute. It is cumulative, and the liability of the sureties upon them, as between each other, is in proportion to their penalties. *Jones v. Hays,* 3 Iredell's Eq. (N. C.) 502 (44 Am. Dec. 78) ; *Taylor v. Taylor,* 66 W. Va. 238 (66 S. E. 690, 19 Ann. Cas. 414) ; *Central Bank & Sec. Co. v. United States Fidelity & Guar. Co.,* 73 W. Va. 197 (80 S. E. 121, 51 L. R. A. [N. S.] 797). The cases of *Bankers Sur. Co. v. Wyman,* 141 Iowa 574, and *In re Estate of Feldner,* 167 Iowa 150, relied upon by W. J. Kelly, are not in point.

II. Appellant W. J. Kelly's alternative point that W. J. Kelly and the Guaranty Company are co-sureties, liable to each other for contribution in proportion to the penalties of their respective bonds, and that the Guaranty Company is not entitled to subrogation, must be, for the reasons and on the authorities above referred to, sustained. In fact, this seems to be practically conceded by the Guaranty Company, whose counsel at the trial stated that he did not go so far as to claim that "we would not be liable under the second bond. My purpose is to show that the administrator was not legally discharged under this order of February 25th, 1921, and we would therefore be in a position of additional surety. * * * And if in this proceedings the court found there was a liability, he could make an order fixing the amount of the two sureties."

2. PRINCIPAL AND SURETY: co-sureties: obligations constituting.

Later, by amendment, the Guaranty Company asserted that the order of revocation was made illegally and without jurisdiction, and that no vacancy existed in the office of the administrator on February 25, 1921. The judgment appealed from provides that, in the event that the Guaranty Company pays the full amount of the judgment, it is to be subrogated, not to exceed $10,000 and interest, against W. J. Kelly. This is error. The case is submitted on the theory that the court should determine the rights of the sureties between themselves. The judgment should be modified so as to give each surety the right of contribution in proportion to penalties of their bonds.

III. The Guaranty Company asserts that there was a devas-

tavit to the amount of the cash, $5,353.75, before its bond was executed, and that it is not chargeable therewith.

We do not determine the question whether, if such a devastavit were shown, the first bond would be solely or primarily held therefor. The trial court below held the Guaranty Company, as well as W. J. Kelly, liable for the $5,353.75. The evidence sustains such finding. While, as has been noted, J. F. Kelly collected the money before the second bond was given, and on December 16, 1920, gave his note for it, and, as he testifies, did so at the instance of the widow, it does not appear that he had dissipated the money, or that it was not under his control when the new bond was given. In this connection, we may notice the contention of the Guaranty Company that Kelly was, ever since his appointment, insolvent. The record does not sustain this contention. The truth of the statements in the reports above referred to is not controverted. As has been noted, the Guaranty Company's objections assert that, in August, 1923, Kelly borrowed $33,000, and used it to prefer other creditors. On the record, the bonds are held for the assets represented by Kelly's notes. *McEwen v. Fletcher,* 164 Iowa 517.

3. EXECUTORS AND ADMINISTRA- TORS: bonds: liability: dev- astavits.

IV. Appellant W. J. Kelly argues that there was a settlement by the widow with the administrator, by accepting his personal notes in payment of her share, and that such settlement released the sureties.

There were negotiations for a settlement by distribution in kind. A stipulation was drawn, but it was not signed. The guardian of the minors had no authority to make such an agreement. While there is evidence tending to show consent by the widow, such consent was evidently conditional on arriving at a settlement between all concerned. She is not an adversary party to the proceeding, and even if she had agreed to the proposed settlement, no determination to that effect which would bind her in the settlement of the account of the present administrator could be made. This contest is between the present administrator and the sureties on the bond. The cause of action is in him.

4. EXECUTORS AND ADMINISTRA- TORS: bonds: liability: pre- sentable issues.

The judgment will be modified as above indicated.—*Modified and affirmed.*

EVANS, C. J., and DE GRAFF, ALBERT, and KINDIG, JJ., concur.