342 S.E.2d 234

**Kenneth A. TABLER, et al.**

**v.**

**Earl W. WELLER, etc.**

**No. 16731.**

Supreme Court of Appeals of West Virginia.

April 3, 1986.

Nichols & Skinner, F. Samuel Byrer, John C. Skinner, Jr., Charles Town, for appellants.

Diana Cook Risavi, Bowles, Reynolds & Risavi, Martinsburg, for appellees.

MILLER, Chief Justice:

In this appeal, we are asked to consider whether the Circuit Court of Berkeley County was correct in holding that an attorney who was the executor of an estate should not be held liable for the interest lost when he liquidated interest-bearing United States Series E bonds and placed the proceeds in a noninterest-bearing bank checking account. A collateral issue is whether the executor is precluded from receiving a fee as executor if he is found liable for the interest.

This suit was initiated by certain beneficiaries of the estate of May Ambrose, who died on January 13, 1976, leaving a will dated February 1, 1973. The total value of the estate was appraised at $33,572.62 and the principal assets were the United States Series E bonds valued at $28,027.57. On March 12, 1976, the executor cashed the bonds and placed them in a noninterest-bearing checking account at the People's National Bank of Martinsburg.

The first and final accounting of the estate was filed with the Commissioner of Accounts on March 4, 1978, approved by him on April 6, 1978, and confirmed by the Berkeley County Commission on April 18, 1978. On March 30, 1979, the beneficiaries filed this suit against the executor, contending he had not acted properly in his handling of the bonds. The case was referred to a special commissioner, who denied relief. His report was affirmed by the circuit court in an order dated December 26, 1984.

## I.

■ The parties agree that the decision most applicable to this case is *In re: Estate of Lapinsky v. Sparacino*, 148 W.Va. 38, 132 S.E.2d 765 (1963), where we held in Syllabus Point 4:

"An executor or administrator of the estate of a deceased person is under a duty to take custody of the estate and to administer it in such a manner as to preserve and protect it for ultimate distribution. In the discharge of such duty, he is held to the highest degree of good faith; and is required to exercise that degree of care and diligence which prudent persons ordinarily exercise, under like circumstances, in their own personal affairs. In determining whether funds belonging to the estate should or should not be invested at interest, he is required to exercise ordinary care and reasonable diligence."

*See also* Syllabus Point 6, *Taylor v. Taylor*, 66 W.Va. 238, 66 S.E. 690 (1909); Annot., 18 A.L.R.2d 1384 (1951).

Two primary justifications are given by the executor for cashing the bonds and placing the money in a noninterest-bearing checking account. First, he was confronted with certain debts owed by the decedent, which exceeded the $910.05 in available cash in the decedent's estate.

Second, the decedent owned a one-fourth undivided interest in a house and lots in Martinsburg. A few months after the executor assumed his duties, he was approached by an attorney representing some of the heirs who also had undivided interests in the same real property. This attorney asked the executor to exercise the power of sale contained in the decedent's will because this would be more beneficial to the heirs. If the property were devised under the will, it would have been further fragmented in ownership and complicated procedurally because one of the devisees was an incompetent.[1]

■ With regard to the first justification advanced by the executor, that he had a need for additional funds other than the $910.05 in the decedent's checking account, we believe this is a valid reason for converting a sufficient quantity of the bonds to cash to pay the outstanding debts. However, this would not justify the conversion of all the bonds to cash.

■ The second justification is that the executor did not anticipate that holding the estate open to sell the decedent's one-fourth undivided interest in the real estate would consume as much time as it did.

---

1. The public auction of the real estate was delayed until October 15, 1977, the sale of the real estate was closed by deed on November 8, 1977, and the executor did not receive the proceeds due to the estate from the sale until January 24, 1978.

The executor claims he cashed all the bonds in anticipation of a prompt distribution. However, this is not an adequate justification because the holding open of the estate to sell an asset does not preclude an executor from making prompt distribution of other assets subject to proper payment of the claims of creditors. *See* W.Va. Code, 44-2-24 (1931).

In *Lapinsky*, the problem was the failure to invest cash funds at interest pending disposition of the estate and we said:

> " 'Under ordinary circumstances, as, for example, where the funds are to be in his hands for a very short time or where practically all of the funds will be required for the immediate needs of administration, deposit in a commercial account subject to check is proper. On the other hand, where there is a substantial sum in excess of the immediate requirements and such sum is to be held over a period of time which will permit the accrual of interest on a savings bank deposit, he should deposit the funds in a savings account rather than in a noninterest-bearing commercial account.' " 148 W.Va. at 48-49, 132 S.E.2d at 771, *quoting* 33 C.J.S. *Executors & Administrators* § 187 at 1167 (1942).

It must be remembered that *Lapinsky* was decided in 1963 when the availability of daily interest was nonexistent from banking or other financial institutions. In the present case, we are not confronted with the failure to invest funds, W.Va. Code, 44-6-1 (1931), but with the removal of interest-bearing funds into a noninterest-bearing account for almost two years. The appraisal shows that the bonds were in multiple denominations, i.e., fifty $25.00 bonds; fifty-one $50.00 bonds; thirty-five $100.00 bonds; and twenty-six $500.00 bonds. It is apparent that the executor could have made a partial liquidation of these bonds to meet the obligations of the estate, thereby retaining the interest earned on the remaining unliquidated bonds.

Consequently, we conclude the executor did not meet the "ordinary care and reasonable diligence" standard mandated in Syllabus Point 6 of *Lapinsky*.

## II.

We turn now to the question of what liability should be imposed. The appellants seek to recover the interest the bonds would have earned and the executor's commissions. These issues were not addressed by either the special commissioner or the circuit court because they found the executor's handling of the bonds met the "ordinary care and reasonable diligence" standard of *Lapinsky*.

### A.

■ Regarding the right to recover interest that should have been earned on funds, in *Taylor v. Taylor*, 66 W.Va. 238, 66 S.E. 690 (1909), we sanctioned charging interest against an administrator who had received funds from a settlement and failed to place them at interest. The general rule appears to be that where an executor or administrator of a decedent's estate is found to have a duty to place funds in his control at interest, if he fails to do so, he may be charged with the amount of interest that would have been earned. *See, e.g., Abdallah v. Boumil*, 4 Mass.App. 499, 351 N.E.2d 551 (1976); *Cooper v. Jones*, 78 A.D.2d 423, 435 N.Y.S.2d 830 (1981); *In re Estate of Lare*, 436 Pa. 1, 257 A.2d 556 (1969); *Matter of Estate of Kugler*, 117 Wis.2d 314, 344 N.W.2d 160 (1984); Annot., 18 A.L.R.2d 1384 (1951).

■ Consequently, we conclude the executor in this case is chargeable with interest from March 12, 1976, the date he cashed all of the bonds, to the date he distributed the funds. He is not chargeable with those funds which were used to pay the decedent's debts, excluding the executor's commissions.[2]

---

2. The total amount of debt listed in the final accounting, excluding the executor's commissions, is $7,122.84. There was an initial balance in the decedent's checking account of $910.05, leaving $6,212.79 to be paid from the bonds. The net amount of the bonds was $28,192.64, leaving a balance of $21,979.85 on which interest is chargeable at six percent per annum,

### B.

The appellants' argument with regard to the forfeiture of the executor's commissions relies on W.Va.Code, 44–4–9 (1931),[3] which provides in material part:

"If any such fiduciary shall wholly fail to lay before the commissioner of accounts, to whom the estate or trust has been referred, a statement of receipts for any year, within four months after its expiration, and though a statement be laid before such commissioner, yet if such fiduciary be found chargeable for that year with any money not embraced in such statement, he shall have no compensation for his services during such year, nor commission on such money, unless allowed by the court." [4]

We have recognized that this section enables the county commission to authorize a fee upon a sufficient showing, even though a fiduciary was late in filing the annual statement of account, as stated in Syllabus Point 14 of *In Re: Boggs' Estate,* 135 W.Va. 288, 63 S.E.2d 497 (1951):

"Code, 44–4–9, provides for the forfeiture of the commissions of a fiduciary upon failure to effect settlement of his account, as required by statute, 'unless allowed by the court'. This section gives to the county court, before whom the fiduciary is required to make his settlement, a sound discretion upon sufficient showing to allow commissions, notwithstanding the fiduciary's dereliction of duty in making the settlement required by statute; and, in the absence of abuse of such discretion, an order of the county court allowing commissions to a fiduciary, who has failed to make proper settlement, cannot be disturbed in a circuit court or in this Court."

*See also Tavenner v. Baughman,* 129 W.Va. 783, 41 S.E.2d 703 (1947). This statute, however, does not foreclose a court from ruling on an executor's fee where the litigation draws the matter into question, as in the present case.

It appears that independent of any statutes, courts have authority to determine whether an executor's conduct should entitle him to a commission, as expressed in *Clare v. Grasty,* 213 Va. 165, 170, 191 S.E.2d 184, 188 (1972):

"It is well settled that the allowance of a commission is within the sound discretion of the trial court. However, a commission should be allowed only when the executor has faithfully discharged his duties to the estate in his charge. A fiduciary's compensation is based upon the services he has rendered in behalf of the estate or trust. *Dearing v. Walter,* 179 Va. 620, 623, 20 S.E.2d 483, 484 (1942). Where there has been partial performance of duty that has been of value to the estate and partial failure to execute such duty, partial compensation may be permitted. *Cannon v. Searles,* 150 Va. 738, 750, 143 S.E. 495, 499 (1928)." [5]

*See generally In Matter of Estate of Shattuck,* 17 Ariz.App. 103, 495 P.2d 873 (1972); *In Matter of Estate of Torian v. Smith,* 263 Ark. 304, 564 S.W.2d 521, *cert. denied,* 439 U.S. 883, 99 S.Ct. 223, 58 L.Ed.2d 195

which appears to be the rate of interest on these bonds from the record.

3.  Since the closing of this estate in 1978, this section was revised in 1982 and is now found in W.Va.Code, 44–4–7. A summary of the rather extensive revisions made in 1982 to Chapter 44 is contained in a Note, *Description of West Virginia's New Probate System,* 85 W.Va.L.Rev. 393 (1983).

4.  The remaining portion of W.Va.Code, 44–4–9 (1931), which contains several exceptions that are not applicable to this case and were not argued to be applicable by the executor, is as follows:

"This section shall not apply to a case in which, within four months after the end of any one year, such fiduciary shall have given to the parties entitled to the money received in such year, a statement of such money, and actually settled therefor with them; nor to a case in which, within such four months after the end of any one year, a fiduciary shall have laid a statement of his receipts within such year before a commissioner who may, in a pending suit, have been ordered to settle his account."

5.  The executor appears to advance the argument that under W.Va.Code, 44–2–18 and –19 (1931), the beneficiaries had an opportunity to complain. These statutes deal with proof of claims by creditors before the commissioner of accounts.

(1978); *In Matter of Estate of Spirtos*, 34 Cal.App.3d 479, 109 Cal.Rptr. 919 (1973); *In re Estate of Burchett*, 16 Ohio App.2d 45, 241 N.E.2d 787 (1968); *In re Estate of Lohm*, 440 Pa. 268, 269 A.2d 451, 47 A.L.R.3d 499 (1970); 31 Am.Jur.2d *Executors & Administrators* § 502 (1967); 34 C.J.S. *Executors & Administrators* § 876 (1942).

While we have not had occasion to specifically adopt this rule, it is clear that we have reviewed fiduciary fees generally authorized under W.Va.Code, 44–4–14 (1931), to determine if they were reasonable.[6] *E.g., Black v. Black*, 171 W.Va. 307, 298 S.E.2d 843 (1982); *In re: Estate of Lapinsky v. Sparacino, supra; Tyler v. Reynolds*, 120 W.Va. 232, 197 S.E. 735 (1938).

■■■ From the foregoing law, we make the following conclusions. First, under W.Va.Code, 44–4–9 (1931), the failure of an executor or administrator of a decedent's estate to file the annual statement of accounts can result in the executor or administrator receiving "no compensation for his services during such year."[7] It should be noted that W.Va.Code, 44–4–9 (1931), must be read *in pari materia* with W.Va.Code, 44–4–4 (1931), which sets the reporting time requirements.[8] Furthermore, independent of this statute, a court may assess the reasonableness of an executor's or administrator's fee under W.Va.Code, 44–4–14 (1931).

■■ The record shows that the executor filed no annual accounting within one year and four months from the date of his qualification, which was January 19, 1976. Consequently, he is not entitled to a fee for

that year, yet the final accounting shows that he took a fee of one thousand dollars on October 13, 1976. His only accounting which was filed on March 4, 1978, was within the second year accounting period since it was within four months of the second anniversary date of his appointment. We, therefore, conclude the executor's fee for this period of $784.88, paid on March 1, 1978, was proper.

Having found that the Circuit Court of Berkeley County erred in not awarding the interest that would have accrued on the bonds and in not requiring repayment of a portion of the executor's fee, we reverse the case and remand it for further proceedings consistent with this opinion.

Reversed and Remanded.

---

**6.** W.Va.Code, 44–4–14 (1931), permits an executor to obtain reimbursement of "any reasonable expenses incurred by him" and "a reasonable compensation in the form of a commission on receipts or otherwise." In the 1982 revisions to Chapter 44, this provision is now found in W.Va.Code, 44–4–12.

**7.** The executor apparently argued with some success below that the local practice in some instances ignored the provisions of Chapter 44. In Syllabus Point 4 of *City of Fairmont v. Hawkins*, 172 W.Va. 240, 304 S.E.2d 824 (1983), we stated: "Where a specific statute or ordinance exists prescribing how official acts should be done, the statutory mandate may not be circumvented by permitting the public official to show that in the past the required statutory procedure has been ignored." The trial court erred in

allowing into evidence testimony on what the local practice in this area of the law was.

**8.** W.Va.Code, 44–4–4 (1931), in pertinent part provides:

"A statement of all the money which any personal representative, guardian, curator, or committee, shall have received, or become chargeable with, or have disbursed, within one year from the date of his qualification, or within any succeeding year, together with the vouchers for such disbursements, shall, within four months after the end of every such year, be exhibited by him before the commissioner of accounts to whom the estate or trust has been referred...."

In the 1982 amendments to Chapter 44, the filing time has been shortened and this provision is now contained in W.Va.Code, 44–4–2.