MARGARET ANNE TAVENNER, *An Infant, etc.*

v.

ANNE DOROTHY BAUGHMAN, *Executrix, etc.*

(No. 9900)

Submitted January 29, 1947. Decided March 11, 1947.

784

*Russell, Hiteshew, Adams & Hickel, H. O. Hiteshew, I. M. Adams,* and *John R. Hickel,* for appellant.

*Donald F. Black,* for appellee.

FOX, PRESIDENT:

Samuel Baughman and Margaret Baughman, his wife, in their lifetime maintained their domicile and residence in Wood County, West Virginia. Three children were born of their marriage: Anne Dorothy Baughman, Jeanette Baughman, and Chester C. Baughman, all of whom survived their parents. Jeanette Baughman married W. J. Tavenner, and of that marriage was born Margaret Anne Tavenner, the plaintiff in the cause now before the Court.

Samuel Baughman, Margaret Baughman, Jeanette Baughman Tavenner, and her husband, W. J. Tavenner, are now deceased, and the date of the death of each of the first three, to be hereinafter stated, is considered as having a bearing on certain questions arising on this appeal. As will hereafter appear, Anne Dorothy Baughman was named as executrix of the wills of her father and mother, and by her sister as executrix and trustee of her estate, and, though the record before us does not show it, it is assumed that she qualified as such in the County Court of Wood County. She was also, on October 2, 1933, appointed by said court as guardian for

Margaret Anne Tavenner. All this being true, it is necessary that the Wills of Samuel Baughman, Margaret Baughman, and Jeanette Baughman Tavenner be referred to in detail, as bearing upon the duties, obligations and conditions under which the said Anne Dorothy Baughman assumed the fiduciary responsibilities aforesaid.

Samuel Baughman died testate on December 21, 1930, and his will dated August 27, 1927, was admitted to probate in the County Court of Wood County on December 27, 1930. By his will he gave to his wife and his daughter, Anne Dorothy Baughman, the net income arising form his estate of a period of three years, and provided that during such period no distribution of his estate should be made, except for the payment of debts, funeral expenses, and expenses of administration. He bequeathed to his son, Chester C. Baughman, the sum of $1,000.00, and to his daughter, Jeanette Baughman Tavenner, the sum of $3,000.00. He made provision for his wife, Margaret Baughman, in lieu of dower, and then provided that the residue of his estate should be divided among his three children. The seventh and ninth paragraphs of his will reads as follows:

"SEVENTH: — I hereby nominate and appoint my daughter, Ann D. Baughman, as executrix of this my will and request that she be not required to give any bond as such executrix. I hereby authorize, empower and direct my said executrix, subject only to the advice and approval of my wife so long as she shall live, to sell and assign at any time any and all of the property, real, personal or mixed, of which I may die seized and possessed, and to make, execute and deliver deeds, assignments or transfers thereof. If any of such property shall be disposed of during the period of three (3) years after my death, the income arising from the proceeds thereof shall be divided in accordance with the second paragraph of this will. If any of my property remains undisposed of after the death of my said wife, my said executrix shall have full control and authority over such property as herein provided and to sell and convey the same, and the proceeds of sale and the

income therefrom shall be distributed as herein provided."

"NINTH: It is my intention that my executrix shall have full power and control, subject only to the advice of my wife, as to all property of which I die seized and possessed, but it is my wish and desire that my property shall be reduced to money as soon as may be done advantageously after my death, and if any remains at the death of my wife, should she survive me, as soon as conveniently and advantageously as the same may be done thereafter and distribution thereof made as herein provided. It may be that the oil and gas property, which I own equally with my wife, may be the best investment procurable, and that it will not be advisable to dispose of it. This matter I leave to the discretion of my executrix, and to the advice of my wife."

The estate of Samuel Baughman was appraised at $20,609.69, made up of the following properties: one-half interest in 583 acres of minerals, $5000.00; one-half interest in 207 acres of land in Wood County, $2600.00; 1,000 shares of Corporate Trust Shares, $5780.00; 1 Liberty Bond, $100.00; cash in bank, $304.69; 130 acres of land located in Westmoreland County, Pennsylvania, $6500.00; one-half interest in royalty in 249 acres of land in Putnam County, $25.00; and a note of Peter Sotus and Edith Sotus for $300.00.

Margaret Baughman died testate on June 1, 1933, and her will, dated February 2, 1931, was admitted to probate in the County Court of Wood County on June 7, 1933. She devised all her real estate and mineral rights to her three children, and, out of her personal estate, bequeathed to Jeanette Baughman Tavenner the sum of $2500.00 and to Anne Dorothy Baughman the sums of $2500.00 and $6000.00. She provided that the residue of her estate should be equally divided among her children, and nominated Anne Dorothy Baughman as executrix, with a provision that she act as such without bond. Her estate was appraised at $12,399.14, made up of one-half interest in minerals in Calhoun County, $4000.-00; the same interest in 206 acres of land in Wood County, $2,000.00; 1230 shares Corporate Trust Shares

(cumulative modified) $2952.00; 675 shares of Super Corporation of América, $1485.00; cash in bank $1602.-67; undivided interest in estate of Samuel Baughman, $259.47; and household goods of the value of of $100.00.

Jeanette Baughman Tavenner died, testate, on September 25, 1933, and her will, dated September 19, 1933, was admitted to probate in the county Court of Wood County on September 30, 1933. She devised her entire estate to Anne Dorothy Baughman in trust, for the use and benefit of Margaret Anne Tavenner, plaintiff herein, her only child and her heir at law; provided that in case of her death without issue before attaining the age of twenty-one her estate should go to her sister, Anne Dorothy Baughman; and, in the event of the death of Anne Dorothy Baughman and Margaret Anne Tavenner before the estate should vest in either of them, it should go to her brother, Chester C. Baughman. The said will contains the following provision respecting the powers vested in Anne Dorothy Baughman, as executrix and trustee:

> "To manage, invest and reinvest the same, with full power to sell or otherwise dispose of any or all thereof, and to do and perform any and all acts and things in connection therewith and in the management and investment of the proceeds therefrom, without limitation or restriction."
>
> * * * * *
>
> "I hereby vest in my Trustee, Anne Dorothy Baughman, full authority and discretion in the management, disposal, investment, use and application of said trust estate, with full confidence that the same will be wisely and properly managed; it being the intent of this clause that the aid of courts shall not be invoked in the handling of said trust estate in any manner whatsoever."
>
> * * * * *
>
> "It is my will that no bond be required of my said trustee, and that she shall not be held liable for any losses which may arise in the handling of said trust estate."

The estate of Jeanette Baughman Tavenner was appraised at $6855.58, made up of cash in bank $1743.21; interest in the estate of Margaret Baughman, deceased, $2500.00; 25 shares Pure Oil Company, $284.37; real estate in Arizona, $1500.00; one automobile, $100.00; Postal Savings Certificate $628.00; household furnishings $25.00; and jewelry and personal effects $75.00.

It is apparent, however, that this last appraisement does not correctly represent the value of the estate, which went into the hands of Anne Dorothy Baughman, as executrix and trustee, and this statement may apply to the Baughman estates, for the bill filed in the cause now before the Court, contains this allegation: "That the appraisals as made and recorded of the estates of Jeanette Baughman Tavenner, deceased, Samuel Baughman, deceased, and Margaret Baughman, deceased, are incorrect and incomplete, and that assets and property not listed in said appraisals together with the property listed therein, is of much greater value than the values shown by said appraisals."

Under these conditions and circumstances, Anne Dorothy Baughman, immediately following the dates of the death of her father, her mother, and her sister, took charge of their respective estates, and exercised full and complete control thereof. She received the incomes from the oil and gas property owned by her father and mother, and, at least, partially applied and distributed them. She paid the debts and funeral expenses of her decedents, and sold or otherwise disposed of the stocks and other types of personal property, including cash in bank, and generally exercised unrestricted use and control of the properties intrusted to her, under the wills aforesaid. Among other methods employed in the administration of said estates, she sold certain corporate stocks held by her in her fiduciary capacity, and reinvested some of the proceeds of such sales in other stocks, from which it now appears heavy losses resulted.

This being the situation, on July 11, 1940, Margaret Anne Tavenner, an infant under the age of twenty-one years, who sued by her next friend, instituted her suit in equity in the Circuit Court of Wood County against Anne Dorothy Baughman, individually and as guardian for the plaintiff, Anne Dorothy Baughman, executrix of the estates of Samuel Baughman, deceased, and Margaret Baughman, deceased, and Anne Dorothy Baughman, executrix and trustee of the estate of Jeanette Baughman Tavenner, deceased, in which she sought a settlement and accounting of the several estates for which the defendant was then acting in a fiduciary capacity.

The bill of the plaintiff, filed on June 29, 1940, and treated as filed at July rules of that year, alleged in general terms the facts hereinabove stated; averred the mismanagement of the estates and failure to make proper settlements; and then prayed for the settlement and accounting of the said estates, and for the removal of Anne Dorothy Baughman as trustee of the estate of Jeanette Baughman Tavenner, deceased, and as guardian for the plaintiff. On June 29, 1940, defendant, Anne Dorothy Baughman, was removed as trustee on the ground that she was at that time a nonresident of the State of West Virginia; and on October 21 following, the Parkersburg National Bank was named as trustee for the estate of the said Jeanette Baughman Tavenner, and at some time became administrator with the will annexed of her estate.

At September rules, 1940, the defendant, individually, and in her fiduciary capacities, filed her answer to the bill of plaintiff, in which she denied the charges laid against her in plaintiff's bill, and denied all liability, basing such denial largely on certain provisions of the wills of her decedents, which, she contends, gave her full power, authority and discretion in the management of the said estates without accountability for losses. On November 23, 1940, the cause was referred to a commissioner in chancery, who was directed to state and report an account showing: (1) the property, real and personal, which came into the hands of defendant in her

fiduciary capacities; (2) what disposition of the properties of the said estates was made; (3) what amount, if any, of the said properties had not been legally accounted for by defendant; (4) the amounts paid to the respective distributees of the estates intrusted to her; and (5) such other pertinent matters on which a report might be required by any party in interest.

Acting under this order, the commissioner made up and filed his report on October 3, 1942, to which both plaintiff and defendant excepted. The findings of the commissioner and all exceptions to his report will be discussed later in this opinion.

In the meantime it appears, from a petition filed in the cause by the plaintiff, that Peoples National Bank of Parkersburg had been appointed by the County Court of Wood County, first as curator, then as administrator with the will annexed of the estates of Samuel Baughman and Margaret Baughman. Said petition, an anomaly in equity pleading, but which we treat as an amended and supplemental bill of complaint, was filed in open court on April 3, 1942, and in which the appointments of the two banks above named in the fiduciary capacities aforesaid is alleged; then follows allegation of the liabilities of defendant in respect to the several estates and trusts aforesaid, which the plaintiff averred she had established before the commissioner before whom the cause was then pending; and ends by praying that Peoples National Bank of Parkersburg, in its fiduciary capacity, retain and withhold all moneys coming into its hands from the estates and trusts represented by them, which would normally, under the wills of Samuel Baughman and Margaret Baughman be paid to the defendant, Anne Dorothy Baughman. Other allegations not important on this hearing appear in the said petition. The defendant later interposed her demurrer to said petition, and filed her answer thereto. On September 16, 1944, an order was entered in the cause sustaining the prayer of the petition, on the allegations in respect to the funds which would otherwise have been payable to Anne Dorothy Baughman.

792

Recurring to the report of the commissioner in chancery, we find it to be most elaborate and painstaking. The use of the funds of the several estates and trusts, in the purchase of alleged speculative stocks by the executrix and trustee, is disapproved, and she is, in effect, held responsible for the losses resulting from such practices; commissions on disbursements were allowed the executrix and trustee; all of the funds in which the plaintiff had an interest were thrown into the estate of Jeanette Baughman Tavenner, including the amounts due from the estates of Samuel and Margaret Baughman; and the commissioner found defendant to be indebted to the estate of Jeanette Baughman Tavenner in the sum of $4381.23, as of August 12, 1940, which with interest to June, 1942, aggregated the sum of $4863.16. This result was reached by balancing the receipts and disbursements of the said estate in the manner following: total receipts, $16,941.14; disbursements, debts, costs aend expenses, $2172.91; paid to plaintiff or for her use $5941.07; delivered to curators $4445.93, a total of $12,559.91, leaving a balance of $4381.23 which, with interest to June 1, 1942, amounted to the sum of $4863.16.

In the report of the commissioner the amounts charged to the executrix and trustee of the Jeanette Baughman Tavenner estate, as received from the estates of Samuel and Margaret Baughman, were reached by separate statements of account, in which the stocks of the said estates sold on September 29, 1936, were charged to the executrix of said estates at the sale price, as distinguished from the appraisal value thereof. Assuming, as we do, that the stocks sold represent those appraised, the loss on the Samuel Baughman stock was $3189.66, the stock being appraised at $5780.00, and having been sold for $2590.34. As to the Margaret Baughman estate, the result is different. At the date of her death, the stocks held by her, and by the Samuel Baughman estate had depreciated in value, and the shares held by Margaret Baughman were appraised at $4437.00, and

were sold by the defendant on September 29, 1936, for $4738.44. There was apparently an increase in the value of these stocks between the date of Margaret Baughman's death in June, 1933, and their sale in September, 1936, and therefore no loss resulted to either estate by the failure to sell the same at the end of the three-year period following the death of Samuel Baughman. The commissioner took no account of the real estate, other than the interest in the oil and gas royalties, except to charge the executrix and trustee with the net amount received from the sale of a part of the Pennsylvania farm.

Both plaintiff and defendant excepted to this report. We think it would be of no value to discuss these exceptions in detail. In general, the plaintiff excepted to the failure of the commissioner to find as due from defendant as executrix and trustee, to the estate of Jeanette Baughman Tavenner, the sum of $7288.96; in not finding that defendant was liable as guardian of plaintiff for the sum of $9183.86, included in which were items of $443.92 and $3033.33, arising from the real estate of Samuel Baughman and Margaret Baughman, other than oil and gas, and the sum of $532.25, covering a Bankers Mortgage & Trust Company bond; in not finding as due from defendant the sum of $88.81, the balance of the bequest made by Margaret Baughman to Jeanette Baughman Tavenner; and in not finding as due from defendant the sum of $1443.66 on account of the balance due on the bequest of $3000.00 made to Jeanette Baughman Tavenner by Samuel Baughman; in allowing to the executrix and trustee commissions on disbursements; and other grounds involving various items of disbursement in the account, too numerous to be detailed in this opinion.

The exceptions of the defendant go to the allowance of the sum of $4863.16 against her as executrix and trustee of the Jeanette Baughman Tavenner estate, on the general ground that the wills of Samuel Baughman and Jeanette Baughman Tavenner relieved defendant of

any responsibility for losses sustained in the administration of the estates intrusted to her; and she contended that she had made full and complete settlement of the said estates. This exception raises the crucial question in the case, namely, whether, in view of their particular provisions, the said wills did, in fact, relieve the defendant of responsibility for losses shown to have been sustained by the estates, through the purchase of stocks and otherwise.

Following the filing of these exceptions, a supplemental report was made by the commissioner dealing with an item of $532.25 aforesaid; an item of $319.33; and an item of $751.74, and finding that all of these items were chargeable to defendant, but that as to the item of $319.33, the balance due was $93.99. Aside from the item of $93.99, the correction of the commissioner's report would not seem to work a substantial or important change in his finding. If the items of $532.25, $319.33, and $751.74 should have been charged to defendant as guardian of plaintiff, it follows that they should be eliminated from the accounting for the estate of Jeanette Baughman Tavenner, for which defendant is executrix and trustee. Manifestly, she should not be charged twice for the same debt.

From statements made in brief of counsel for defendant, the cause was submitted on the original report of the commissioner, and the exceptions thereto, and on the supplemental report, in October, 1942, and a decision was announced by the trial chancellor in May, 1944. The final decree, from which this appeal is prosecuted, was entered on June 24, 1946.

The decree covers the four estates involved, and must be treated separately and in detail, as to each estate, further along in the opinion. At this point it is sufficient to state that the court overruled the exceptions of the defendant to the reports of the commissioner, and sustained those of plaintiff; ignored to a large degree, the report of the commissioner; and rendered decrees

against defendant, personally, in the amounts and to the persons and corporations following: (1) to Parkersburg National Bank, administrator with the will annexed of the estate of Jeanette Baughman Tavenner, the sum of $1443.66, as the balance due on the legacy bequeathed by Samuel Baughman to Jeanette Baughman Tavenner; (2) to the Parkersburg National Bank, administrator with the will annexed of Jeanette Baughman Tavenner, the sum of $88.81, representing the balance of the legacy of $2500.00 bequeathed by Margaret Baughman to its decedent; (3) to Parkersburg National Bank, administrator with the will annexed of Jeanette Baughman Tavenner, on a settlement of her estate, the sum of $6288.96; (4) to plaintiff, Margaret Anne Tavenner balance due on the defendant's guardian account, the sum of $8798.83. Interest is included in all of the above decrees to August 1, 1940, when defendant ceased to represent said estates and trusts as a fiduciary, and all are made to bear interest from that date.

The funds in the Peoples National Bank of Parkersburg, derived from the estates of Samuel Baughman and Margaret Baughman, which in normal course would have been paid to Anne Dorothy Baughman, were ordered to be applied on the said decrees, and if insufficient to pay the same, the interests of defendant in the tracts of land and oil and gas royalties of the Samuel Baughman and Margaret Baughman estates were directed to be sold at the front door of the courthouse of Wood County for cash, and the proceeds applied thereto. The decree does not require notice of sale to be published in the county where the property to be sold is situated, but does require it to be published in a daily newspaper of general circulation in the counties of Wood, Putnam, Calhoun and Wirt. The decree is irregular in this respect. In *Central Trust Co. v. Feamster,* 123 W. Va. 250, 14 S. E. 2d 619, it was held: "A judicial sale of real estate must be advertised in a newspaper published in the county in which such real estate is situated, except as provided in Code, 55-12-2, but the realty need not be sold in that county."

Before dealing in detail with the several money decrees above stated, it is necessary to pass upon the following questions of law: (1) in determining the duties and responsibilities of defendant as the fiduciary, to which of the wills involved herein should resort be had; (2) on what date did defendant become chargeable, as executrix, with the value of the stocks owned by the estates of Samuel Baughman and Margaret Baughman at the time of the death of each; (3) should defendant be held responsible for the value of stocks or money realized from any of the estates involved herein, and invested in speculative corporate stocks; (4) should the real estate of Samuel Baughman, which he desired sold and the proceeds distributed, be treated as personalty, prior to actual sale thereof; (5) what commission, if any, should be allowed on moneys disbursed by defendant as a fiduciary; and (6) what rule should be applied as to interest on yearly balances in the hands of defendant as fiduciary? We shall discuss these questions in the order stated.

The answer to the first question will necessarily have a bearing on the answer to the third question stated above, for this very obvious reason: In the will of Samuel Baughman, the defendant is named as executrix, and she is given "full power and control" and "full power and authority", subject to the advice of the wife of testator; in the management of his estate; in the Margaret Baughman will, it is provided that defendant shall act as executrix without bond. When we come to the will of Jeanette Baughman Tavenner, we find that defendant herein is named as executrix and trustee with power and authority as heretofore set out in this opinion, and to which we here refer.

It is the contention of defendant that, inasmuch as the father and mother of Jeanette Baughman Tavenner preceded her in death, her interest in their estates vested in her immediately, and became a part of the estate devised and bequeathed by her to plaintiff; and that the will of the said Jeanette Baughman Tavenner,

mother of plaintiff, controls as to the power, authority and discretion vested in defendant as executrix and trustee of her estate. On the other hand, counsel for plaintiff say that the words "or to her heirs at law", used in subsection 2 of paragraph Eighth of the will of Samuel Baughman operated to pass to Margaret Anne Tavenner the Jeanette Baughman Tavenner interest in his estate, upon her death. The same position seems to be taken as to the estate of Margaret Baughman, although the words "or to her heirs at law" do not appear in the Margaret Baughman will.

The paragraph in the Samuel Baughman will, mentioned above, provides that the residue of his property, after the payment of specific bequests shall be divided "one-third of such residue shall be paid to my daughter, Jeanette Baughman Tavenner, or to her heirs at law". In the Margaret Baughman will the provision is that the residue of her property, after the payment of specific bequests "shall be divided and distributed in equal portions to my said three children, Chester C. Baughman, Jeanette Baughman Tavenner and Anne Dorothy Baughman."

We hold that the shares of the estates of Samuel Baughman and Margaret Baughman, devised and bequeathed by them to Jeanette Baughman Tavenner, became vested in her immediately after the death of each of them, and became a part of the estate of Jeanette Baughman Tavenner, which she devised and bequeathed in her will; and that on the question of the duties, powers and authority of defendant, as executrix and trustee, in the administration of the estates in her charge, the will of Jeanette Baughman Tavenner, controls as to her estate; but plaintiff having an interest in seeing that the estates of Samuel Baughman and Margaret Baughman should be properly administered, had the incidental right to demand that such administration be conducted in accordance with the terms of the wills under which her interest was created, even though it, in effect, passed to her mother and from her to plaintiff; but the estates

having vested in Jeanette Baughman Tavenner on the death of her parents, her will, in the main controls. As to the Margaret Baughman estate, there can be no question. As to the Samuel Baughman estate the answer is not so clear. In his will, he provided that there should be no distribution of his estate until the expiration of three years, and then provided that one-third of the residue of his estate, after the payment of the specific bequests, should go to Jeanette Baughman Tavenner "or to her heirs at law". We do not believe the use of these words operated to delay the vesting of the estate in Jeanette Baughman Tavenner. Counsel for plaintiff cite and strongly rely on *Schaeffer* v. *Schaeffer*, 54 W. Va. 681, 46 S. E. 150, to sustain their position. In our opinion, that case is not applicable here. There the testator gave his widow a life estate in land, with power to sell and consume the proceeds, with the provision that on the death of the widow any property remaining should be sold, and the proceeds distributed. That situation is far from the one presented in the case at bar.

Then equity favors the vesting of estates. "Devises and bequests are to be construed as vesting at the testator's death, unless the intention to postpone the vesting is clearly indicated by the will." 9 Michie's Va. and W. Va. Digest, 1132, Section 166, under Wills. See *Sellers* v. *Reed*, 88 Va. 377, 13 S. E. 754; *Chapman* v. *Chapman*, 90 Va. 409, 18 S. E. 913; *Suter* v. *Suter*, 68 W. Va. 690, 70 S. E. 705; *Stout* v. *Clifford*, 70 W. Va. 178, 73 S. E. 316; *Bland* v. *Davisson*, 77 W. Va. 557, 88 S. E. 1021; *Cowherd* v. *Fleming*, 84 W. Va. 227, 100 S. E. 84; *Patton* v. *Corley*, 107 W. Va. 318, 148 S. E. 120; *Burche* v. *Neal*, 107 W. Va. 559, 149 S. E. 611.

In answering question No. 2, it must be borne in mind that the will of Samuel Baughman empowered his executrix to sell all of his property at any time, but provided that no distribution of his estate should be made until the expiration of three years after his death, during which period the income therefrom should be paid to his wife and his daughter, Anne Dorothy Baughman. At

the date of his death on December 21, 1930, he owned one thousand shares of Corporate Trust Shares, which he had purchased at a cost of $8000.00, and which were appraised on January 3, 1931, at $5780.00, or $5.78 a share. At the date of the death of Margaret Baughman on June 1, 1933, she owned 1230 shares of Corporate Trust Shares (cumulative modified), which we assume are of the same class as the shares owned by the Samuel Baughman estate, and which were appraised on June 16, 1933, at $2.40 a share, or $2952.00. From this appraisement it may reasonably be assumed that on June 16, 1933, the Samuel Baughman shares were worth the sum of $2400.00, a decline in value of $3380.00. These Samuel Baughman shares were not sold until September 29, 1936, and the proceeds of the sale made on that date was $2590.34, so that the actual decline in value, and the loss from the appraised value of $5780.00 was $3189.-66. The commissioner did not hold defendant responsible for this loss; the trial chancellor did; which is the correct ruling?

We hold that, in the circumstances of this case, defendant is only chargeable with the value of said shares as of December 21, 1933, the date when she should have sold them, and applied the proceeds of sale to the bequests of $1000.00 to Chester C. Baughman and $3000.00 to Jeanette Baughman Tavenner. The Samuel Baughman will, properly construed, required the sale of this stock at that time, if an advantageous sale thereof could be made. There is nothing in the record which shows that it would not have been advantageous to sell the stock at that time. True, as we can now see, the stock increased in value $190.34 up to the date of its sale on September 29, 1936, but it was not good administration to delay sale and distribution for nearly three years to secure the small increase in value noted above. It is true that defendant could have sold the Corporate Trust Shares at any time after her qualification as executrix under the Samuel Baughman will; but, under Code, 44-6-2, she was not required to make such sale unless directed to do so by the will, or ordered to do so by a

court; and aside from this statute we do not believe her failure to do so during the three-year period, when no distribution could be made, was an abuse of the discretion vested in her under said will. During some of this period the stock paid substantial dividends. Her mother, Margaret Baughman, whose advice Samuel Baughman required to be considered, and who owned 1230 shares of the same stock, did not sell her shares. For these and many other reasons which could be advanced, one being that this was stock the testator had selected and held as an investment, we do not believe defendant should be penalized for her failure to sell promptly the corporate shares aforesaid. In *In re Leavitt*, 135 Misc., 387, 238 N. Y. S. 109, it was held by a Surrogate Court: "Under will empowering trustee with written consent of executor, if for best interest and conservation of estate, to sell principal of trust estate, and reinvest the proceeds of sale in other income-bearing securities as they may select as reasonably safe for investment, trustee had implied power to retain, as part of trust fund, securities and investments of which testator died possessed." That rule may well be applied to the case at bar.

The answer to the third question requires a consideration of the provisions of the will of Jeanette Baughman Tavenner, conferring certain powers upon the executrix and trustee named therein, and by which the testatrix clearly attempted to relieve her from liabilities which ordinarily attach to anyone acting in a fiduciary capacity. As to the estates of Samuel Baughman and Margaret Baughman, any investment or dealing in stocks would clearly be improper, for, in the absence of testamentary direction, the sole office of a personal representative of a decedent is to reduce the personal estate to cash, and distribute the same among the persons entitled thereto. However, it does not clearly appear that any part of these estates was used to purchase or deal in stocks. It does appear that on August 21, 1936, the executrix and trustee of the Jeanette Baughman Tavenner estate purchased, with the funds of that estate, 300 shares of the stock of Baltimore American Insurance

Company at a cost of $2850.00, which stock was later sold, and other stock purchased, and other sales made, all of which resulted in the loss of substantially the original investment. Apparently, these purchases and sales constituted an attempt to recoup the losses, which, at that time had resulted in connection with the stocks being held for the estates of Samuel Baughman and Margaret Baughman. These purchases and sales were made through brokers in New York, and it seems certain that the executrix and trustee exercised little, if any, control over the many transactions involved; but seems to have delegated her authority and discretion to third persons. The question is, did defendant in entering into the transactions aforesaid, and in delegating to third persons the authority given to her only, under the wills, assume personal responsibility for the same, and for the resulting losses?

The answer must be in the affirmative. We are not unmindful of the fact that defendant was not only executrix of the estate of Jeanette Baughman Tavenner, but trustee as well; by the Tavenner will she was specifically empowered, in the broadest possible terms, to sell and convey the property devised and bequeathed to her in trust, and to invest and reinvest the same. The only child and heir at law of decedent was, at the date of said will, nine years old, requiring that her estate be controlled by a fiduciary for approximately twelve years. For this reason, the designation of defendant as trustee, and the broad powers given her as such, is understandable. Nor do we minimize the force and, apparently, the intended meaning of the paragraphs of the will which provide that defendant should not be held liable for any losses which might arise in handling the trust estate; and the other provision that requires that she may manage, invest and reinvest the estate without limitation or restrictions. But broad and plain as these provisions are, we cannot conceive of their application to a case where a fiduciary has been guilty of fraudulent conduct, wilful waste or reckless acts; or where, instead of exercising the powers and discretion vested under the will, as the

testator intended, delegates that power and discretion to others. When such a delegation occurs, the party making it becomes personally responsible for the acts of his agent. In the case before us, there is nothing in the record showing any actual fraud on the part of the defendant. The commissioner held that she acted in good faith; but acting in good faith does not excuse her fault. Liability often rests on acts performed in perfect good faith. We do not believe defendant was guilty of intentional wrong, but she gravely erred in engaging in what has all the appearance of stock speculations, a practice in which the law cannot permit fiduciaries to engage, however broad their testamentary powers may be. The State is always interested in seeing that the estates of deceased persons are settled fairly, honestly, and as promptly as circumstances will permit. No provision of a will, however broad, covering the powers granted to an executor, will be permitted to be used to release such executor from the consequences of acts which are calculated, in many instances, to result in waste and destruction of the estate committed to his control. In other words, equity, regardless of the provision of a will covering the duties and powers of an executor, will require of him good faith, and the exercise of that prudent judgment which men ordinarily exercise in their own affairs, and the testatrix may well have had this general rule in mind when she executed her will. That a testator may vest in his executor discretionary powers as to the administration of his estate, cannot be denied. In *Whelan* v. *Reilly*, 3 W. Va. 597, in discussing the will there under consideration, it was held: "That it is not void for the discretionary power in the trustees; it being a well settled rule that a discretionary power may be conferred on trustees either by the express terms of the trust or by implication from the nature of the duty imposed on them, whenever the object of the trust is certain." Where such powers are honestly and reasonably exercised, there is no liability. *Baer* v. *Kahn*, 131 Md. 17, 101 A. 596. In the proceeding *In re Detre's Estate*, 273 Pa. 341, 117 A. 54, it was stated that, "All that a

court of equity requires of a trustee is common skill, common prudence and common caution, and he is not liable when he acts in good faith as others do with their own property. * * * Furthermore, a trustee will not be held personally liable for an honest exercise of a discretionary power, in the absence of supine negligence or wilful default." See also *Cromey* v. *Bull,* 4 Ky. L. Rep. 787. But we think that these cases recognize that there is, in all cases, an implied equitable requirement that a fiduciary shall exercise the powers vested in him with that care which a man of prudent judgment ordinarily exercises in his personal affairs.

Equity sets up a high standard for the conduct of fiduciaries. Usually, the beneficiaries of the trusts committed to fiduciaries are infants, or persons under disability, and therefore incapable of protecting their interests. If the law does not protect them, who will? When a testator commits his estate to an executor, under the broadest powers and discretion, he will not be treated as having turned over his estate to be wasted by reckless and irresponsible management. We hold that the provisions of the Jeanette Baughman Tavenner will should be construed as intended only to relieve her executrix from losses that might occur as the result of the reasonably prudent management, which equity requires of all fiduciaries, such as losses following the investment of funds in securities of supposed solid and permanent value, as distinguished from securities of speculative value; or the retention of securities beyond the date when, in view of subsequent developments, it appears that a sale thereof should have been made. The action of the executrix of the Samuel Baughman estate, in not selling his Corporate Trust Shares, illustrates the rule. In the case at bar, the record shows that it was believed that the shares of stock of the Samuel Baughman and Margaret Baughman estates would not fluctuate in value to any great extent, and for that reason the brokers recommended their sale. If any part of the proceeds of their sale was invested in other stocks, and on this record it is not clear, it was the idea of purchasing stocks

which might increase in value. This was pure speculation, and, even under the wide discretion vested in the executrix and trustee, cannot be justified.

There is a strange dearth of authority on the subject, probably due to the fact that there has always been some statutory regulation of investments by guardians and other fiduciaries, in situations where estates are required to be invested, and not to be distributed promptly. As stated above, the question does not arise in the ordinary case of an administrator or executor. We are of the opinion that the case of *Davis* v. *Davis Trust Co.*, 106 W. Va. 228, 145 S. E. 588, lays down the rule which should govern in situations such as that presented on this appeal. It was held in that case, pts. 1, 2, 3, 4 and 6, syl.:

"It is the plain duty of a trustee to conform strictly to the directions in the instrument creating the trust.

"The preservation of the trust fund is the paramount duty of a trustee. He should never jeopardize the principal in order to increase the income.

"Except where expressly authorized by the trust instrument, the trustee should not ordinarily invest the trust fund in the securities of a private corporation. He may, however, invest a reasonable amount of the fund therein, where the securities have a market value based on a regular income, and the corporation is at the time productive and has acquired by reason of the value of its property and prudent management over a number of years, such a reputation for permanence and stability that cautious and intelligent persons, familiar with such corporations, commonly invest their own money in it as a permanent investment and not for the primary purpose of securing a considerable income therefrom.

"The diligence and sound judgment of a trustee in investing trust funds will be subjected to a searching inquiry by a court of equity. And while a trustee is only required to exercise good faith and the care and prudence in executing the trust which

men of common prudence ordinarily exercise in their own affairs, yet the care and prudence exacted by the rule is that of the investor, not the speculator; is that of one seeking safety for his principal, and not that of one, who out of his abundance can afford to risk a modicum of his substance on the chance of making an extraordinary profit.

\* \* \*

"A beneficiary may hold his trustee personally liable for trust funds misappropriated."

*In re the Estate of John W. Groves,* 120 W. Va. 373, 198 S. E. 142, we held a personal representative personally responsible for an investment in the bonds of a real estate company, where the value of the bonds appeared to be uncertain. On the whole, we are of the opinion that defendant should be held personally responsible for losses sustained in the purchase, with funds of the estates here involved, of speculative stocks, occurring on and after August 21, 1936.

Coming to the fourth question we are of opinion that the trial chancellor erred in charging defendant, as guardian, with $3033.33, representing the supposed value of plaintiff's one-third interest in 130 acres of land in Westmoreland County, Pennsylvania, and a like interest in 207 acres of land situated in Wood County, owned by Samuel and Margaret Baughman at the dates of their death, Samuel Baughman's interest therein being appraised in the aggregate of $9100.00. In the will of Samuel Baughman he expressed this desire: " \* \* \* but it is my wish and desire that my property shall be reduced to money as soon as may be done advantageously after my death, and if any remains at the death of my wife, should she survive me, as soon as conveniently and advantageously as the same may be done thereafter and distribution thereof made as herein provided." He then uses language which relieves his executrix from selling his oil and gas property. The property involved has not been sold, except about five acres of the Pennsylvania farm, and the purchase price thereof has been accounted for as personal property. It may be

admitted that there where a testator directs that real estate be sold and the proceeds of sale distributed, it is, under the equitable doctrine of conversion, treated as personalty and chargeable to his executor as such, from the date of the testator's death. *Peters* v. *Trust Co.*, 118 W. Va. 484, 191 S. E. 581, and many cases cited therein. But the direction to sell must be mandatory, or necessarily required. Here the testator only expressed a wish and desire that his property be sold. That wish and desire would work such conversion were the property actually sold; but it is not, in our opinion, sufficient to warrant us in holding in this case that the land is personalty in advance of its sale. Then, plainly, the testator did not direct a sale in absolute terms: he only expressed his wish and desire that all his property be reduced to money "as soon as may be done advantageously after my death". There is nothing in the record showing whether an advantageous sale of said real estate could have been made at any time since the testator's death. So far as the record discloses, the heirs of Samuel Baughman have never demanded such sale. Under the will, the executrix had a wide discretion as to the sale of this real estate; it is not shown that she abused it; the real estate remains as a part of the Samuel Baughman estate; the plaintiff is the owner of a one-third interest therein; and she is not, in the peculiar circumstances of this case, entitled, under the doctrine of equitable conversion, to impose a forced sale of such interest at a price which may or may not be in excess of its value.

Answering the fifth question, we are of the opinion that the trial chancellor erred in denying to defendant all commissions on disbursements made by her from the estates in her charge. An examination of the record before us discloses that defendant, over a period of nearly ten years, performed necessary and valuable services, from which plaintiff has received great benefits. The income from the Samuel Baughman and Margaret Baughman estates has been largely represented by payments of royalty from oil and gas properties, involving their deposit in bank, and the necessary accounting and dis-

tribution thereof. There has been other income from rentals of real estate and dividends on stocks and bonds. The aggregate of the disbursements made by defendant is large, and payments to plaintiff and for her benefit aggregate no small amount. No doubt defendant, by reason of the provisions of the will under which she was acting, and the close family relations between her and plaintiff, did not consider herself bound to make annual settlements. However, this may be, we cannot see that plaintiff has been prejudiced by defendant's failure to make such settlements, provided the equivalent thereof is enforced in the accounting now being made. Defendant made more than one settlement of the Samuel Baughman and Margaret Baughman estates, and one statement of her account as executrix and trustee. There is no showing, or even intimation, that defendant has failed to report every dollar received by her as a fiduciary. Her fault has been that she improperly used a comparatively small part of the estates in what we think were speculative ventures. In so doing, she was probably actuated by good motives, and exercised good faith, although her fault is not excused thereby. The commissioner so found, and allowed commissions on disbursements.

The allowance of compensation to fiduciaries is controlled by Code, 44-4-9 and 14. Whether it shall be paid, and the amount thereof, is expressly made discretionary. Under Section 9, where a fiduciary has failed to make proper reports, commissions can only be allowed him by the court before which his settlement is made; while Section 14 requires the commissioner of accounts to allow him a reasonable compensation. Considering every aspect of this case, we are of opinion that defendant should be compensated by way of an allowance of reasonable commissions on all funds actually disbursed by her, except such funds as were used in the purchase of stocks of a speculative nature. Such purchases should not have been made, and defendant, being at fault, should not be permitted to profit from her own error. In allowing commissions, care should be taken not to allow commissions more than once on the same fund. Speak-

ing generally, mere bookkeeping transactions, where the same fiduciary handles funds belonging to different trusts, should not be used as the basis for a duplication of commissions.

The sixth and last question bears upon the charging of interest on yearly balances. Yearly settlements should have been made, and if balances against the fiduciary existed at the date of any settlement, which could have been, and should have been, distributed at that time, the fiduciary became chargeable with interest on such balance; but only distributable balances should bear interest.

Having expressed our views on the legal questions involved in this case, there remains only the difficult task of applying them to the decree of June 24, 1946, appealed from. We shall not undertake to decide what sums, if any, should be decreed against defendant. We have neither the time nor the facilities for such an undertaking, one which only an expert accountant can properly perform; but we shall endeavor to point out, what appears to us to be, errors in the basic items on which the trial chancellor's decree is predicated. We are assuming the cause will again go to a commissioner, and our effort is to aid the court and the commissioner in reaching a settlement of this most difficult and complicated litigation.

We wish to point out, however, that the funeral expenses chargeable against the estate of Samuel Baughman should have been paid out of the corpus of his estate, rather than from the incomes from his property, which he bequeathed to his wife and the defendant for three years from his death. It appears from the record that some of these expenses, if not all of them, were paid out of incomes from the estate, rather than the corpus thereof. Furthermore it appears that among the items which in the decree are credited to the executrix, as properly chargeable to the Samuel Baughman estate, were those covering the funeral expenses of Jeanette Baughman Tavenner and Margaret Baughman. The fu-

neral expenses and the expenses of administration should be paid out of the respective estates of the decedents; and in any future adjustment of these matters this requirement should be taken into consideration and applied.

The decree of $1443.66 to the Parkersburg National Bank, administrator with the will annexed of Jeanette Baughman Tavenner, deceased, is based upon the legacy of $3000.00 bequeathed to her by the will of Samuel Baughman. The trial chancellor charged defendant with this legacy in full, when he found that personal property of the value of $6375.22 went into the hands of defendant as executrix on December 21, 1933. This necessarily includes the appraised value of the 1,000 shares of Corporate Trust Shares at $5780.00, for the reason that, in addition thereto, and aside from a note never collected, only a $100.00 Liberty Bond and $304.00 in cash are listed in the appraisement of the personal property of Samuel Baughman's estate. As we have heretofore indicated, the 1,000 shares of Corporate Trust Shares were at that time not worth in excess of the amount that they finally sold for, which was $2590.34; so that instead of there being a net estate at that time of $6375.22, the value of the personal estate would not have exceeded $3184.56, and after the payment of funeral expenses and other proper charges could not have greatly exceeded the sum of $2000.00, as applicable to legacies. We do not undertake to determine the exact amount, but using $2000.00 as the basis, Chester C. Baughman would have been entitled to be paid out of said fund the sum of $500.00, and Jeannette Baughman Tavenner $1500.00. In no event could there have been any sum beyond approximately $1500.00, derived from the personal estate, which could be applied on these legacies. This being true, we think the basic charge of $3000.00 is incorrect, and if the proper charge had been made, assuming the same to have been $1500.00, and taking into consideration the sums afterwards paid on this legacy, there would be nothing due. As we view the case, the decree of $1443.66, being arrived at on the basis of charging to defendant,

the executrix, the full appraised value of the Corporate Trust Shares aforesaid, is erroneous in its entirety.

When we come to the calculation contained in the decree of $88.81 to Parkersburg National Bank, administrator with the will annexed of Jeanette Baughman Tavenner, representing the balance due on the legacy of $2500.00 bequeathed to her by the will of Margaret Baughman, we find that the same is based upon the theory that there was not sufficient personal property in the Margaret Baughman estate to pay the three legacies therein bequeathed, and that the proportionate shares of the estate which could properly be applied to the $2500.-00 legacy to Jeannette Baughman Tavenner was, on June 1, 1934, the sum of $1336.31 We are of opinion that no proper exceptions can be taken to this finding of the court. Justification for any different determination would involve more labor and expense than the amount of the decree warrants.

The decree of $6288.96 to Parkersburg National Bank, administrator with the will annexed of Jeanette Baughman Tavenner, is based upon the figure of $7150.23, assumed to be due the estate in 1933-4. This amount may be correct, but we have found nothing in the record from which we can ascertain on what reason or calculation it is based, or how that finding was reached by the trial court. We think this finding deserves further examination. The decree is excessive to the extent that, in the calculation based upon the figure aforesaid, no commission is allowed the defendant, and the matter of whether proper interest was charged should be inquired into, following the rule as to interest hereinbefore adopted in this opinion.

The decree of $8798.83 against defendant, and in favor of Margaret Anne Tavenner, on account of defendant's guardian account is, in the first place, based upon an item of $443.90, described as one-third of the supposed residue of the personal estate of Samuel Baughman, deceased, after the payment of legacies aggregating

$4000.00 bequeathed by his will. This, as we have indicated above, is erroneous. The Samuel Baughman personal estate was not worth more than $3184.50 at the date when distribution thereof should have been made. There was not sufficient to pay the legacies, costs of administration, and funeral expenses, and it follows that there could be no balance of the personal estate, in which plaintiff or the estate of her mother could share, and the item of $443.92, and the item of $17.36 interest on same, should not have been charged to defendant in any capacity.

The same is true as to the item of $3033.33, with interest thereon amounting to $118.23, for the reason which we have heretofore discussed at length in this opinion. The item of $339.74, representing one-third interest in receipts from oil and gas from the Samuel Baughman estate for the period from December 22, 1933, should have been accounted for in the Samuel Baughman estate, and not by the guardian of his granddaughter. The only items properly chargeable to defendant as guardian is the item of $532.35, the proceeds of the Bankers Mortgage & Trust Company bond, purchased for plaintiff, and the sum of $319.33 deposited to the credit of plaintiff in a savings account.

The receipts from the estate of Samuel Baughman and Margaret Baughman, in the way of rentals and royalties from oil and gas properties, and from other sources, should have been accounted for by defendant as executrix of their wills, and should never have entered into any other account. Whatever of such incomes was properly payable to defendant, as executrix of the estate of Jeanette Baughman Tavenner, should have been accounted for in the settlement of her estate. Of course, any balance due that estate under the Jeanette Baughman Tavenner will, should have been turned over to the guardian so long as she acted as such, or to her successors as such, or to plaintiff, if she now be of adult age.

.. The principle on which we think these several estates should have been settled, and should now be settled, is to handle in separate accounts, the estates of Samuel Baughman, Margaret Baughman and Jeanette Baughman Tavenner. Incomes derived from either the Samuel Baughman estate, or the Margaret Baughman estate, should be accounted for in the settlement of their estates; and any money paid from either to the Jeanette Baughman Tavenner estate should be credited to the executrix of the Samuel Baughman and Margaret Baughman estates, and charged to defendant as executrix of the estate of Jeanette Baughman Tavenner. By this method the estate of Jeanette Baughman Tavenner can be definitely ascertained, and, when so ascertained, should be transferred to the guardian of plaintiff, Margaret Anne Tavenner; and there should, of course, have been charged to the guardian any other items, not originating from the estates of her grandparents or her mother. The report of the commissioner apparently attempted to follow that system of accounting. He found a certain sum as due the estate of Jeanette Baughman Tavenner. We cannot see how the continuance of the Samuel Baughman, Margaret Baughman, and Jeanette Baughman Tavenner accounts can be escaped or avoided, until the properties of the Samuel Baughman and Margaret Baughman estates are sold and distributed. After that is done, any further accounting of those estates will be unnecessary, because there will be nothing to account for. After that accounting is made, the value of the Jeanette Baughman Tavenner estate can finally be determined, and the amount which will pass to the plaintiff and go into the guardianship account. It must be remembered that the oil and gas properties are still intact, and that, with the exception of about five acres, the real estate owned by Samuel and Margaret Baughman remains unsold. Until these estates are closed, these separate accounts must be kept.

We have endeavored to cover in this opinion what we regard as the important corrections to be made on a

reexamination and resettlement of these estates. We have not undertaken to be exact as to figures. We have not passed upon a number of minor items which will have to be considered to reach a correct settlement. The very nature of the case renders such a task impossible for us. We think, however, that we have pointed out, in the main, the errors which, in our opinion, the trial chancellor committed; and, by reason of these errors, we reverse the decree of June 24, 1946, and remand the cause to the Circuit Court of Wood County for further proceedings, not inconsistent with the views herein expressed.

*Reversed and remanded.*