# CHARLESTON.

### BUXTON v. SHAFFER.

Submitted February 3, 1897—Decided April 10, 1897.

1. EXECUTORS—*Commissions—Wills.*

   A will devises realty to four devisees equally, vesting them with legal title, and gives the executor naked power to sell for the interest of all concerned; and by agreement among the devisees they convey to each other in severalty certain parcels at agreed valuation, on account of their interests. The executor is not entitled to commission thereon. (p. 297.)

2. ELECTION TO TAKE LAND.

   Election to take land referred to. (p.298)

Appeal from Circuit Court, Berkeley county.

Suit by Ella S. Buxton against D. W. Shaffer and others. Decree for plaintiff, and defendant Shaffer appeals.

*Affirmed.*

FAULKNER & WALKER, for appellant.

FLICK & WESTENHAVER, for appellee.

BRANNON, JUDGE:

C. M. Shaffer, by his will, devised two parcels of realty to his daughters, Ella S. Buxton and Maria E. Shaffer, and then devised all his property, real and personal, one-third to his wife during life or widowhood, and the rest equally among four children, by the following language: "One-third of my estate I give unto my beloved wife, Ann M. Shaffer, during her natural life, as long as she remains my widow; the remaining part to my two boys, D. W. Shaffer and Charles H. Shaffer, and the girls to have shares proportionally, charging them with the parts set apart for them; all to share alike after my debts are paid. My wife has the privilege of taking any one of my houses as part of her thirds." And in the will is the clause: "I appoint my brother Joseph Shaffer and my son D. W. Shaffer my executors, with full power to sell any or all of my property which shall be to the interest of all concerned, or rent or

make use, as they think best for each other." These four children made a partition of the real estate, save a few parcels, and they joined in deeds, along with the executor, conveying to each one certain parcels thereof at certain valuations. This is a suit brought by Ella S. Buxton, one of the four children, against D. W. Shaffer, who qualified as sole executor, and the other children, for the purpose of settling the accounts of such executor as such. The case was referred to a commissioner, and before him the executor claimed, but was refused, a commission on twenty-seven thousand nine hundred dollars, being the valuation placed on the real estate which the said devisees, as above stated, conveyed to each other by the said agreed partition; and the court refused him this commission in its decree, from which he appeals.

The question, then, is, is he entitled to commission on this real estate which the devisees parceled out among themselves at a certain valuation? What estate vested in the executor in said real estate? Plainly, none, for the operation of the will was to confer upon the children the legal title to said realty, and the executor had a mere naked power to sell, not coupled with any interest or title in the realty. 1 Lomax, Ex'rs, p. 218, c. 1; *Dunn's Ex'rs* v. *Renick*, 33 W. Va. 476 (10 S. E. 810). I do not see how, when no estate whatever in that realty vested in the executor, when he was not chargeable with its rents, and had nothing to do with it save the mere power of selling, and that to be exercised only at the call, as I think, of the children, he could be entitled to any commission. Even where a will vests in an executor title with power to convert realty into personalty for distribution of the proceeds among devisees, they may elect to waive the conversion into personalty, and take the property as land, and dispense with a sale, in which case they take it as land. 2 Lomax, Ex'rs, 171. Where, in such case, the devisees unite in the conveyance of the property as land, it is an election to take it as land. An agreement among all the parties to hold the land in the proportion of the money bequeathed to them would be an election to take it as land. Where title is thus conveyed to an executor with power to sell, but there is no absolute injunction upon him to sell and it is unnecessary to sell,—as seems to be the

case here with respect to the property conveyed,—it is un-
necessary to execute that power if those interested do not
desire it, because there is no purpose to be answered by it.
*Carney* v. *Kain*, 40 W. Va. 758 (23 S. E. 650). Indeed,
where the whole beneficiary interests of the land directed
to be converted into money by sale is in the children, a
court of equity will not compel the executor to execute
the trust against the wishes of the *cestuis que trustent*,
but will permit them to take the land, if they elect to do
so before the sale has been made, and this election they
may make as well by acts or declarations clearly indi-
cating it as by application to a court of equity. *Craig* v.
*Leslie*, 3 Wheat. 563; *Harcum's Adm'r* v. *Hudnall*, 14
Grat. 369. But, in fact, this law about election only makes
plainer the right of these children under this will to this
property. In fact, we need not call it into requisition, be-
cause the will itself conferred the title and whole right on
these children, giving no estate whatever to the executor.
The power given him by this will was the merest naked
power, intended to further the interests of the devisees as
they should see their interests, or rather to further their
mere will, for the language of the will indicates that the
sale was only to be made if they desired it, and deemed
such sale promotive of their interests. It was not to be
made for the benefit of creditors, or for any reason outside
the interests of the children. The executor received
nothing from these lands. Why give him commission?
His merely joining in the deeds by which the devisees con-
veyed to each other this realty does not make it what it
essentially is not, a sale by him under the will. It was
not necessary for him to join. He passed no title thereby.
It was deemed prudent, perhaps, to make the title appear
better on its face, but his participation therein was unsub-
stantial otherwise. A commission on actual receipts is,
under the practice long established in Virginia and this
State, the mode of compensation to personal representa-
tives for their services, as laid down in *Kester* v. *Lyon*, 40
W. Va. 161 (20 S. E. 933); *Estill* v. *McClintic*, 11 W. Va.
399, and *Hoke* v. *Hoke*, 12 W. Va. 429. The cases of *Far-
neyhough* v. *Dickerson*, 2 Rob. (Va.) 582, and *Hipkins* v.
*Barnard*, 4 Munf. 83, are referred to, to sustain this claim
for commission. They held that where a personal repre-

sentative turned over to legatees bonds on their legacies or shares the executor would be entitled to commission. But in those cases they were personal assets, vested wholly in the representative, and when he turned them over they were received as money. But in *Claycomb's Legatees* v. *Claycomb's Ex'r*, 10 Grat. 589, it was held that where the executor turned over slaves to legatees or distributees he was not to be allowed commission on their value. The title to them was vested in him, but he was not to sell them unless required by the demands upon the estate. He was really there liable, chargeable with them, and yet was allowed no commission,—a much stronger claim for commission than here. And in the late case of *Metcalfe* v. *Colles*, cited to us as a New Jersey case found in 10 Atl. 804, it was decided that where it is not necessary to sell real estate to pay debts, and the executor surrenders it in kind to the devisees, he is not entitled to commissions on the price thereof. I have not had access to that case, but it surely is expressive of the law. There is no reason why this executor should charge his brother and sisters commissions on property with which he was not chargeable, and as to which he performed no duty. He simply signed those deeds. Surely, the line of decisions heretofore, directing us as to commissions, would not warrant its allowance by this Court.

The second point of objection against the decree is that the court decreed the sale of some other items of realty. There seems to be nothing in this point, because the unpaid debts of the estate beyond the personal assets, so far as appears, were upwards of one thousand and eight hundred dollars, and the real estate remaining undisposed of was valued at one thousand three hundred and fifty dollars, with a gross rental of one hundred and sixty dollars *per annum*, out of which taxes and repairs would have to be paid, and it would take many years for the realty by rental to discharge the debts of creditors who had right to payment in a reasonable time, and we see no error in the court in making provision for the sale of this part of the realty of the decedent. We therefore affirm the decree.

*Affirmed.*