*In Re*: ESTATE OF H. B. HAUER

(No. 10299)

Submitted January 17, 1951. Decided March 1, 1951.

*J. Campbell Palmer, III,* for plaintiff in error.

*H. D. Rollins, Edwin .O. Thornhill, Harold J. Conner,* for defendants in error.

FOX, PRESIDENT:

This proceeding originated before a commissioner of accounts of Kanawha County, who had before him the settlement of the estate of H. B. Hauer, who died January 22, 1948, and left an estate, made up in its entirety of personal property, which was appraised at $156,812.81. He died testate, and distributed his estate among various legatees. No question is raised as to the validity of the will. The matters involved on this writ of error grow out of an alleged agreement made between H. B. Hauer and his two brothers in relation to the joint support of

their mother. Aside from questions relating to an allowance of counsel fees, and the fee of the commissioner of accounts, no other contested matter arises on the record before us.

As stated above, the dispute arises over the expense of providing for Emma Hauer, who was the mother of H. B. Hauer, T. K. Hauer and H. M. Hauer. The father of these three men died in 1912 leaving no estate, and the care of his widow, Emma Hauer, fell on the three sons named above. She lived until April, 1946. It appears that in 1942 she suffered serious injuries in an accident, and that following this accident there was an admitted oral agreement among the three Hauer brothers by which she was to be taken care of by H. B. Hauer, because he was then, by comparison with his brothers in the best financial condition to do so, and the expenses thereof to be shared equally among the three. Following this 1942 agreement, it seems to be admitted that H. B. Hauer provided for their mother; it may be that H. M. Hauer in some way contributed thereto; and it is clear that T. K. Hauer recognized his obligation to pay his one-third of the total expenses of such care, which, it is claimed, amounted to $10,306.41.

The will of H. B. Hauer, dated November 12, 1947, was admitted to probate in the County Court of Kanawha County, and Roy B. Rollins, one of the executors named therein, qualified as the sole executor of said will. In looking over the papers of H. B. Hauer, he found a copy of a letter, dated November 8, 1946, addressed to T. K. Hauer, 420 Augusta Street, Cincinnati, Ohio, evidently written by H. B. Hauer, and admittedly received by T. K. Hauer, which reads as follows:

"Dear Brother:

"I am enclosing an itemized statement of the amount of money I spent during Mother's illness, for which amount I have cancelled checks.

"Right after mother had her accident and I talked to you over the phone, you told me to take

complete charge of the situation, since I was the only one in the family at that time, financially able.

"You also told me and wrote me several letters that you would reimburse me for your part of the expense.

"Since you sold your business and made some money lately, I would appreciate it very much if you would mail me a check by return mail for $3435.66, your part of the expense.

"I purchased $40,000.00 worth of road building equipment this summer and fall and could use the money very conveniently.

"Hoping that your business is good and you are enjoying good health.

Yours truly,"

Attached to the letter was a copy of an itemized statement, at the end of which was the following:

"H. B.—$6,952.41
"H. M.— 3,354.57

"3) 10,306.98

"3,435.66"

T. K. Hauer did not respond to this letter in any way, and later gave as his reason therefor that he had a claim against H. B. Hauer for his share of the expense of providing for his mother for the thirty years prior to 1942, as will hereinafter appear. He did not at any time controvert the claim asserted by H. B. Hauer in the letter quoted above, and was willing to concede the same as against what he claimed H. B. Hauer owed him.

After the estate of H. B. Hauer was committed to the commissioner of accounts, and after a conference with H. B. Hauer's executor, T. K. Hauer filed a claim against the estate of H. B. Hauer in the sum of $21,830.95. The account against the H. B. Hauer estate is made up as follows: T. K. Hauer estimates his contribution to the

support of Emma Hauer, at the rate of $2,000.00 per year, beginning with the year 1913, and continuing to August, 1942, to be $59,333.33; and house rent for twenty-nine and two-thirds years amounts to $16,466.00, making the total cost of such maintenance and house rent $75,799.33, of which, according to T. K. Hauer, H. B. Hauer should have paid one-third, minus the sum of $3,435.66 that he was indebted to the H. B. Hauer estate for his share of the care of his mother after 1942, thus leaving a net balance of $21,830.95 which he claimed the estate of H. B. Hauer should pay him. T. K. Hauer being a legatee under the will of H. B. Hauer, the executor of H. B. Hauer, presumably in order to protect his estate, filed a claim against T. K. Hauer for the $3,435.66, referred to in the letter of November 8, 1946, copied above, which he claimed T. K. Hauer should pay to the estate, and it was upon these conflicting claims that evidence was introduced before the commissioner of accounts, and upon which he made his report on April 25, 1949. The commissioner disallowed the claim filed by T. K. Hauer, and sustained the claim of the H. B. Hauer estate for the $3,435.66, and found that this amount should be collected from the T. K. Hauer estate. The County Court of Kanawha County, on August 18, 1949, upheld this report, to which action a writ of error was applied for to the Circuit Court of Kanawha County, on December 2, 1949, and refused on December 22, 1949. It appears that T. K. Hauer died during the progress of the litigation, and on June 12, 1950, at the instance of his ancillary administrator, we granted this writ of error.

In our opinion, the sole basis for the claim of the estate of T. K. Hauer, which amounts to $21,830.69, is the contention that there was a written agreement in 1912 between H. B. Hauer, H. M. Hauer and T. K. Hauer that T. K. Hauer should provide for the maintenance and support, so far as he was able to do so, of their mother, Emma Hauer, and that the expenses thereof should be equally borne by each of them, with settlement to be made at a later date. Unless such written agreement

be produced, or if lost, its contents established, the claim of T. K. Hauer's estate must be denied, because it is well settled that aid by a son to his mother will be presumed to be gratuitous, unless such aid is extended in circumstances from which it can be reasonably implied that it was not so intended, and that the parties contemplated that the party furnishing the aid should be reimbursed for money advanced or services rendered. This is the rule where a claim is filed against the estate of the person for whom services were performed, and should be applied with more force where liability on the children of the deceased person is sought to be enforced. For a general discussion of this subject see *Ireland v. Hibbs,* 125 W. Va. 31, 22 S. E. 2d 706; *In Re Fox Estate,* 131 W. Va. 429, 48 S. E. 2d 1. There is no proof or circumstance of that nature in the case before us, and for that reason we say that the claim of the T. K. Hauer estate must, in the circumstances of this case, rest on establishing the alleged written agreement of 1912. No such agreement was produced, and the failure to produce the same is explained by the claim that it was lost in one of the floods which devastated the City of Cincinnati in 1937 or 1945, T. K. Hauer being a resident of that city at the time, and having his office in the low section of the city. A sufficient showing being made that this alleged agreement could not be produced, T. K. Hauer, in his testimony before the commissioner of accounts, attempts to state its contents, but this is a transparent evasion of Code, 57-3-1, which, among other things, provides that:

> "* * * No party to any action, suit or proceeding, nor any person interested in the event thereof, nor any person from, through or under whom any such party or interested person derives any interest or title by assignment or otherwise, shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the time of such examination, deceased, insane or lunatic, against the executor, administrator, heir-at-law, next of kin, assignee, legatee, devisee or survivor of such person, or the assignee or committee of such insane person or lunatic. * * *"

494

We need not cite authority to support the statement that the testimony of T. K. Hauer, taken before the commissioner of accounts, so far as it relates to transactions and communications between him and H. B. Hauer, was inadmissible. The alleged written agreement of 1912 was certainly a transaction. If it had been produced, it would, of course, have spoken for itself. Not being introduced because lost, T. K. Hauer could not testify as to its contents. Furthermore, nothing in the correspondence introduced in evidence between the parties to this present dispute, or between any of the parties even remotely connected with the dispute, over the long period of thirty years or more, makes any reference to the written agreement on which T. K. Hauer bases his claim, and we must, therefore, hold that the evidence submitted to the commissioner of accounts fails to establish that such an agreement was ever executed.

We think it clearly shown by exhibits filed in the case by T. K. Hauer, that, during the period from 1912 to 1942, he contributed in a substantial way to the support of his mother. Some thirty checks in the amount of $50.00 each, drawn by T. K. Hauer and payable to Emma Hauer during the period aforesaid, are filed with the record; also a number of letters written by Emma Hauer to her son T. K. Hauer, in which she spoke of receiving his checks, and of his generosity in caring for her. These letters, however, speak of some aid given her by her other sons H. B. Hauer and H. M. Hauer. She does not mention the amount of any contribution by any one of her sons; but it seems quite clear that T. K. Hauer carried the burden of her support over a long period of time. It is also clear that he loaned her $28,000.00 in bonds, the coupons of which, representing accrued interest, she was allowed to use for her own purpose. Ten thousand dollars of these bonds was lost in speculation, carried on by H. M. Hauer, and $18,000.00 thereof was returned to T. K. Hauer on the death of his mother in 1946. It is also quite clear that T. K. Hauer furnished his mother, and probably other members of the immediate family, a home or homes

in Lebanon, Pennsylvania. During the thirty years his mother lived in two homes, and may have had title to one of them, but by her will she devised her real estate to T. K. Hauer, so that $18,000.00 in bonds and the home were returned to T. K. Hauer. This situation explains the item of rent stated in his account filed before the commissioner of accounts.

The claim of T. K. Hauer is also supported by the testimony of one Ivan Hanna, who claims to have been an intimate friend of H. B. Hauer over a long period of years. He testified that H. B. Hauer told him on many occasions that he was indebted to his brother T. K. Hauer on account of his brother having supported his mother at a time when he was unable to assist in doing so. Never at any time did he indicate the amount of his indebtedness. Hanna says that he suggested to him that he go to Cincinnati and settle with his brother and pay him what he owed him, and that H. B. Hauer said, in effect, that he would take care of him in his will. Hanna also testifies that there was not good feeling on the part of H. B. Hauer towards his brother H. M. Hauer. The force of this testimony is somewhat weakened by the fact that when H. B. Hauer made his will in 1947 the largest specific and residuary bequests were made to his brother H. M. Hauer, while T. K. Hauer was bequeathed only one-sixth of the estate after the bulk thereof had been specifically bequeathed to others. The testimony of Hanna is not sufficient to establish any obligation on the part of H. B. Hauer to his brother T. K. Hauer. From this testimony, so vague and uncertain, this Court cannot determine what that obligation was, and certainly it is insufficient to justify the allowance of this large claim of $21,830.95. At the most it tends to show a recognition by H. B. Hauer of an obligation to pay his brother something on account of his care of Emma Hauer.

As against the testimony of Hanna, we have the claim of H. B. Hauer asserted in a letter of November 8, 1946, written a few months after his mother's death, in which he requests that T. K. Hauer pay him the sum of $3,435.66,

and furnishes a statement of his expenditures in providing for his mother following her accident in 1942. Of course, T. K. Hauer's estate is not bound by this self-serving letter, but it should be considered in connection with Hanna's statement that H. B. Hauer considered himself as being indebted to T. K. Hauer. It seems strange indeed that if T. K. Hauer had this large claim against H. B. Hauer, for his share of his mother's support prior to 1942, he would not have asserted that claim and taken some steps to have the accounts between them settled. T. K. Hauer's explanation of his failure to do so is not satisfactory, and is not in accord with the way that character of business transactions are usually handled. Then we have the testimony of the secretary of H. B. Hauer, who began working for him in 1936, that prior to 1942, H. B. Hauer, on occasions, sent checks to his mother, and this, taken together with the exhibits filed in the case, indicate that while T. K. Hauer carried the main burden of his mother's support, prior to 1942, H. B. Hauer did contribute, in a lesser and probably small degree, to that support.

On the whole, we conclude that while T. K. Hauer, prior to 1942, did contribute generously to the support of his mother, no agreement for reimbursement for such support by H. B. Hauer has been shown, and that the commissioner of accounts correctly denied the claim asserted on the basis of such agreement. We do not discuss the equities of the situation. We simply say that no agreement has been shown between T. K. Hauer and H. B. Hauer under which it can be held that H. B. Hauer was liable to T. K. Hauer for any part of the money expended by him for his mother's maintenance and support prior to 1942.

When we come to the question of the support of Emma Hauer, subsequent to her accident in 1942, the case seems to be clear. All admit that the three brothers agreed that H. B. Hauer should take charge of his mother and care for her until her death; and the expense thereof to be borne by them jointly and equally. There is no ques-

tion raised as to the correctness of the account his executor files.

According to that account, the total amount of money expended by H. B. Hauer in the care of his mother from 1942, to her death in 1946, was $6,952.41, one-third of which he was entitled to pay, and the other two-thirds to be borne in equal proportion by H. M. Hauer and T. K. Hauer. The liability of each of the brothers would be quite simple but for the fact that the executor of H. B. Hauer seems to have accepted the statement of H. M. Hauer that he had paid the sum of $3,354.57 for the care of his mother, to which was later added $81.47 which was paid H. B. Hauer's executor, and claimed to be his full share of the entire amount paid for the care of Emma Hauer beginning in 1942. The commissioner of accounts accepted the contention of H. B. Hauer's executor that the total amount expended in the care of Emma Hauer, after 1942, was $10,306.98, and that, therefore, the one-third of the whole amount was $3,435.66, which should be paid by T. K. Hauer's estate to the estate of H. B. Hauer.

This finding may be correct, but some showing should have been made as to the amount claimed to have been expended by H. M. Hauer. So far as we can observe from the evidence, there was no proper explanation of H. M. Hauer's claim, and it should not have been admitted. If, in fact, H. M. Hauer paid the full one-third of the total expended in the care of his mother during that period, and has performed his full obligation under his agreement, then the money expended by H. B. Hauer paid the full balance for such support, of which T. K. Hauer should have paid one-half. On that assumption, the finding of the commissioner of accounts is correct; but if the payment claimed to have been made by H. M. Hauer is eliminated, then the amount chargeable to T. K. Hauer's estate was one-third of $6,952.41 or $2,317.47. Inasmuch as this case will have to be remanded to the county court for further action, inquiry should be made with respect

to the claim of H. M. Hauer, as bearing upon the amount of money which should be paid by T. K. Hauer's estate.

T. K. Hauer does not deny that under the 1942 agreement he was liable for one-third of the expenses of providing for the care of his mother subsequent to that date. His ancillary administrator does question the amount which the commissioner of accounts found against his decedent's estate, as discussed above, and we think further inquiry should be made along that line. But inasmuch as we are of the opinion that the claim of T. K. Hauer for the support of his mother prior to 1942, as against the estate of H. B. Hauer, has not been established, the sum due from the T. K. Hauer estate to the H. B. Hauer estate, subsequent to 1942, should be determined. This is the holding of the commissioner of accounts, and this we affirm in principle, but we think the question of the amount that should have been charged to T. K. Hauer's estate has not been properly determined.

The question of the statute of limitation is not here involved. Had the alleged written agreement of 1912 been established, we are of the opinion that the statute of limitation would not begin to run until the death of the mother, inasmuch as the 1942 agreement would have been, in effect, an extension of the earlier written agreement, and no final settlement could have been reached prior to the mother's death. We have held, however, that the execution of such written agreement has not been established, and we need not consider or pass upon the question of the statute of limitation as applied thereto. The only agreement which this Court can consider is the agreement of 1942, and as to the claim based thereon, we do not understand that any part of it could be denied, as to H. B. Hauer's estate, on account of the statute of limitation, inasmuch as that statute did not begin to run until the death of Emma Hauer in April, 1946.

The plaintiff in error raises two other questions: one is the allowance of counsel fees to the attorney representing the executor of the H. B. Hauer estate; and the

other is the amount allowed by the county court to the commissioner of accounts for his services.

As to the allowance to counsel for the executor, there is no showing of the amount of work involved in looking after the interests of the executor in this proceeding; nor does the order of the commissioner of accounts in making such allowance indicate whether the same was in full for all services rendered in the contest with the estate of T. K. Hauer, or whether it covered the entire service performed by the attorney for the estate. Such allowance having been questioned, we think there should have been a showing of what the claim of counsel for services rendered was intended to cover, and a showing of the reasonableness of the charge. We have nothing before us, nor did the county court, on which any finding, as to reasonable compensation for services rendered, could be made; and without passing upon the correctness of the allowance made, we think the case should be remanded to the county court for further examination on that point, and, if necessary, for further proof.

The fee allowed by the county court to the commissioner of accounts should be considered from a different standpoint. In determining an allowance to counsel, the commissioner should have taken into consideration such matters as the extent of services performed, the importance to the estate of the issues involved, and the amount of money at stake. As to a commissioner of accounts, he is an officer of the court, and any allowance to him should be made upon the basis of reasonable compensation for work performed, taking into consideration the time employed in taking testimony, filing exhibits and reading the same, examining authorities, hearing arguments, preparing his report, and, of course, other matters of such a nature as cannot be defined. Section 9 of Chapter 25, Acts of the Legislature, 1943, provides:

> "A commissioner of accounts, except where it is otherwise specially provided, shall be allowed for any service such compensation as the

court for which he is such commissioner shall from time to time prescribe.

"The commissioner shall indicate to the court, in writing, the compensation he believes he is entitled to receive for services performed."

In this instance, the commissioner of accounts indicated to the court that he believed he was entitled to receive the sum of $2,500.00.

The printed record in this case is not large, consisting of one hundred and fifty-three pages, about one-half of which is made up of testimony taken in the case. There were filed with the testimony a large number of exhibits, consisting of letters, checks, etc., not printed in the record. The fee suggested by the commissioner of accounts should have been closely examined by the county court. There was no such examination, and we do not think this large amount should have been allowed by the county court without some examination as to the reasonableness of the allowance. There was an exception to the report on the ground of such fee, and to the allowance of the fee for counsel. This exception called for an examination by the county court as to the reasonableness of the allowance. We do not at this time indicate what would have been a reasonable charge, as we have no evidence on which we could make such an allowance, and neither did the county court. We can say no more on this subject than to express the opinion that the statute contemplates that an allowance for services, in this character of litigation, should be made on the basis of a reasonable compensation to the commissioner for the time employed by him in the various activities necessary to making a complete report, and without giving undue importance to the value of the estate. An allowance beyond the reasonable value of services performed should not be imposed upon a large estate merely because of that fact. Citizens are entitled to have the services of public servants at a reasonable cost considering the time and effort employed in performing such services.

We affirm the order of the Circuit Court of Kanawha County in sustaining the action of the county court of said county in this proceeding, so far as it denies to the administrator of T. K. Hauer the claim filed by him against the estate of H. B. Hauer; and so far as it finds liability against the estate of T. K. Hauer, and in favor of the estate of H. B. Hauer for his proper share of the expenses in caring for Emma Hauer, including and after 1942; but we reverse the said order on the amount which was ordered to be collected by the H. B. Hauer estate from the estate of T. K. Hauer, and so far as the allowance of counsel and commissioner of accounts fees is concerned.

The proceeding is remanded to the County Court of Kanawha County with directions to make further examination as to the correct amount to which the executor of the H. B. Hauer estate is entitled from the estate of T. K. Hauer; for the purpose of investigating the reasonableness of the fee of counsel, and the extent of work covered by the claimant therefor; and also to examine and determine the reasonableness of the fee to be allowed the commissioner of accounts for his services in connection with the settlement of the estate of H. B. Hauer. The county court may, in its discretion, remand this proceeding to the commissioner of accounts for determination of all matters necessarily involved under this opinion, except the ascertainment of the proper amount to be paid to the commissioner of accounts, which, under the statute, is within the reasonable discretion of the county court. The costs on this writ of error shall be paid by the estate of H. B. Hauer, as a part of the cost of the settlement and distribution thereof.

*Affirmed in part;*
*reversed in part;*
*remanded with directions.*