In Re: Estate of Gus Lapinsky

(Also Known as Konstanty Lapinski)

*v.*

Anthony J. Sparacino, *Admr., Etc.*

(No. 12237)

Submitted September 24, 1963.   Decided October 22, 1963.

*Herman D. Rollins,* for plaintiff in error.

*Warren A. Thornhill, III,* for defendant in error.

CALHOUN, JUDGE:

This case, which originated in the County Court of Raleigh County, involves an assertion in behalf of the sole distributee of the estate of a deceased person that the administrator received excessive compensation for his services as such personal representative, and that he improperly failed to invest funds of the estate at interest pursuant to the provisions of Code, 1931, 44-6-1.

Gus Lapinsky, who was also known as Konstanty Lapinski, a resident of Raleigh County, died intestate, unmarried and without children, on July 14, 1957. The appraisement listed, as distributees of the estate, three sisters, cousins of the decedent, who live in New Jersey. Anthony Sparacino, a practicing attorney of Beckley, Raleigh County, qualified as administrator of the estate and the matter was referred to Robert J. Ashworth, commissioner of accounts. Ashworth also is a practicing attorney. The sole assets of the estate, aggregating $10,636.61, as disclosed by the appraisement, were as follows:

Cash in Beckley National Bank (savings) $7,422.26
Cash on person _____ 2,044.00
Cash in Perth Amboy Savings Institution,
Perth Amboy, New Jersey_____ 1,170.35

In addition to the assets listed above which were owned by the decedent immediately before his death, the report of the final settlement discloses an additional receipt by the administrator from the Social Security Administration in the sum of $108.90. The administrator withdrew

the sum of $7,422.26 from the savings account and the sum of $1,170.35 from Perth Amboy Savings Institution, both of which sums had been drawing interest. The sums thus withdrawn and the money found on the person of the decedent were deposited in a checking account.

It developed subsequently that the three cousins of the decedent, who reside in New Jersey, were not distributees of his estate, but rather that the sole distributee was a sister of the decedent whose name is Aniela Cackowska, and who is a resident and citizen of Poland. Acting through the Polish Embassy at Washington, D. C., she made claim to the estate and submitted proof of her relationship to the decedent. The attorney who represents her in this case apparently was engaged in her behalf by the Polish Embassy.

In connection with the withdrawal and transfer of funds from Perth Amboy Savings Institution, the administrator engaged the services of Samuel V. Convery, a New Jersey attorney, and paid him $75.00 from the assets of the estate for his legal services. The administrator made a reasonable explanation of his reason for employing Convery. This item of expenditure is not made the basis of a specific assignment of error either in the petition or in the brief filed in this Court.

In stating his report of the final settlement of the accounts of the administrator, the commissioner of accounts approved and allowed the following disbursements to the administrator:

Fees, costs and commissions_____$680.69
Fees and commissions_____ 500.00
Miscellaneous expenses_____ 170.00
Preparation of final report, postage and
correspondence with Polish Embassy,
through their counsel, and legal services____ 150.00

Counsel for the sole distributee excepted to the report of the commissioner of accounts which was dated July 2, 1960. On April 29, 1961, a hearing was had before the commissioner of accounts at which testimony was taken in relation to the questions presented by the exceptions to

the report. The commissioner of accounts made a supplemental report dated May 17, 1961, by which the exceptions were overruled and the amount of the compensation paid to the administrator was again approved. On June 13, 1961, the County Court of Raleigh County in regular session entered an order by which it overruled the exceptions, ratified and confirmed the supplemental report and discharged the administrator and the surety on his bond from further liability in relation to the estate. On June 27, 1961, the distributee appeared by counsel before the county court in regular session and moved that it vacate its prior order and permit arguments on the questions raised by the exceptions. This motion was overruled and counsel objected and excepted to the action of the county court.

On October 11, 1961, the clerk of the county court certified the record for purposes of appeal, and on the same date the distributee by counsel presented to the Circuit Court of Raleigh County her petition for a writ of error to the action of the county court and a written brief in support of such petition. In the absence of any action on the petition by the circuit court, and at the instance of the distributee, this Court, on April 2, 1963, issued a writ of mandamus to require the judge of the circuit court to act upon the petition. *State ex rel. Cackowska* v. *Knapp,* 147 W. Va. 699, 130 S. E. 2d 204. On April 9, 1963, the circuit court entered a brief order by which it denied a writ of error. From that order a writ of error was granted by this Court on May 13, 1963. This Court subsequently granted to the distributee leave to move to reverse the judgment of the circuit court pursuant to Code, 1931, 58-5-25.

Code, 1931, 44-4-14, provides for compensation of personal representatives to be determined by the commissioner of accounts as follows: "The commissioner in stating and settling the account shall allow the fiduciary any reasonable expenses incurred by him as such; and also, except in cases in which it is otherwise provided, a reasonable compensation in the form of a commission on receipts or otherwise." This language of our statute was

taken from the Code of Virginia and has remained unchanged to this time. *Tyler et al.* v. *Reynolds et al.*, 120 W. Va. 232, 253, 197 S. E. 735, 744-45. The same statutory language has been retained in Virginia. *Perrow* v. *Payne*, 203 Va. 17, 24, 121 S. E. 2d 900, 905.

In the third point of the syllabus of *Estill & Eakle* v. *McClintic's Admr.*, 11 W. Va. 399, the Court stated: "The ordinary commission allowed an administrator is five per cent on his receipts, but under peculiar circumstances a larger commission will be allowed him; * * *." In the fourth point of the syllabus of *Hoke, Executor* v. *Hoke*, 12 W. Va. 427, the Court stated the same proposition in similar language as follows: "The ordinary commission allowed an executor is five per cent of his receipts; but under peculiar circumstances he may be allowed more. * * *." In *Kester* v. *Lyon*, 40 W. Va. 161, 20 S. E. 933, the Court pointed out that the usual mode of computing compensation to a personal representative is by a commission on receipts. In the first point of the syllabus of that case the Court stated: "Commissions to an executor on uncollectible debts ought not to be allowed. If entitled to anything for service as to them, it must be specific compensation." "A commission on actual receipts is, under the practice long established in Virginia and this State, the mode of compensation to personal representatives for their services, * * *." *Buxton* v. *Shaffer*, 43 W. Va. 296, 298, 27 S. E. 319, 320. In *Tyler et al.* v. *Reynolds, et al.*, 120 W. Va. 232, 250, 197 S. E. 735, 743, the Court stated that an allowance of five percent on actual receipts is the usual basis of compensation, but that it is merely a "rule of thumb" for the purpose of fixing the value of the services rendered. In the recent case of *Perrow* v. *Payne*, 203 Va. 17, 24, 121 S. E. 2d 900, 905, the court summarized its many prior decisions as follows: "What is 'reasonable compensation' as provided by the statute, in a given case, has been the subject of much litigation in this Court. * * * From an early date this Court has recognized that, by custom, an executor is usually entitled to commissions of five percent upon actual receipts * * *. However, a five percent commission is subject to increase or reduction of this rate under peculiar circumstances."

In 34 C.J.S., Executors and Administrators, Section 867, at pages 1028-29, it is observed that some courts have adopted "a specified rate of commission as the measure of compensation in ordinary cases, which will not be exceeded or reduced unless a proper case therefor is shown by clear and convincing evidence." In the succeeding section (Section 868, at page 1030), it is stated: "A claim for an extra allowance will be carefully scrutinized, and the allowance can be made only when it appears that the services were necessary, that they were of an extraordinary character, that they were actually performed to promote some object beneficial to the estate, and that the circumstances are such that justice to the representative requires that he shall be allowed something more than the ordinary compensation."

From authorities previously cited, we believe that five percent of actual receipts is a firmly established guide or standard, though by no means an inflexible guide or standard, which for years has been adhered to in this state and in Virginia, as a measure of "reasonable compensation" to a personal representative for his services as such; but that, under peculiar circumstances, a higher or a lower rate of compensation will be deemed reasonable and proper. The same general principles apply even though the personal representative is a lawyer. A personal representative who is a lawyer is not entitled to a higher rate of compensation than he would be entitled to if he were not a lawyer; and this is true notwithstanding the fact that the estate derives benefit from his legal knowledge. It is a part of the fiduciary obligation and duty of the lawyer to accord to the estate entrusted to him the full benefit of his competency, including his legal knowledge; and, if the estate is not a peculiar or unusual one, he is not entitled to a peculiar or unusual compensation merely by virtue of the fact that he is a lawyer. Every personal representative is entitled to be reimbursed from funds of the estate for "any reasonable expenses incurred by him as such;" and every personal representative, whether a lawyer or a layman, is entitled to more than the usual compensation, "in the form of a commission on receipts or otherwise," in

a case in which peculiar or unusual services by him are required and performed.

"In the absence of statute, the general rule is that where a lawyer becomes executor or administrator, his compensation as such is in full for his services, although he exercises his professional skill therein; and even if he performs duties which he might properly have hired an attorney to perform, he is not entitled to attorneys' fees. This rule is one of public policy, grounded upon the principle that a trustee shall not place himself in a situation where his interests conflict with his duty as a fiduciary." 21 Am. Jur., Executors and Administrators, Section 532, page 679. "The majority rule appears to be that in the absence of statute otherwise providing, an executor or administrator is not entitled to extra compensation for legal services rendered by him." Annotation, 65 A. L. R. 2d 809, 811, supplementing similar annotations in 49 A. L. R. 1033 and 36 A. L. R. 748.

*Tyler et al.* v. *Reynolds et al.,* 120 W. Va. 232, 197, S. E. 735, involved an allowance by a commissioner of accounts of an attorney fee of $2,000 to one of three co-executors of an estate who was an attorney and who had performed extensive legal services in litigation and otherwise in behalf of the estate. The Court held that it was improper to have allowed the executor an attorney fee as such; but that it was proper to make a reasonable allowance to him in his capacity as executor for performance of peculiar and unusual services. The sixth point of the syllabus is as follows: "In settlement of a decedent's estate it is improper for an executor who is a lawyer to be allowed, for extra services performed by him, a legal fee in addition to commissions; but, within carefully circumscribed bounds to be fixed and determined by the proper tribunal, extra services of a fiduciary-lawyer may be taken into account in fixing his compensation under the statute."

It will be noted that the administrator in this case received compensation for items designated as fees, costs and commissions; fees and commissions; miscellaneous expenses; preparation of final report, postage, correspond-

ence and legal services. There does not appear in the record any itemization of the fees, costs, commissions, miscellaneous expenses, postage or the amount asserted and allowed for legal services. Though the record does not disclose dates of disbursements, it is fairly obvious that the several items of compensation were paid by the executor to himself by four different checks on four different dates. There is nothing which indicates that such items of compensation were allowed by the commissioner before they were paid. All that appears from the record is that such payments, previously made, were approved by the commissioner of accounts in his report of final settlement. Though the reasonableness and propriety of such items of disbursement were called in question by the exceptions to the initial report, and though the administrator testified at the ensuing hearing in justification of such expenditures, no effort was made by him in his testimony to particularize or itemize the fees, costs, commissions, miscellaneous expenses, or the amount charged for postage and for legal services. We are not afforded, therefore, any fairly adequate basis for a determination that the items of expenses were reasonable and proper or that more than ordinary and usual compensation was proper.

In his testimony before the commissioner of accounts, the administrator stated that the designation of part of the $150 disbursement as "legal services" may have been "a poor choice of language." He stated that the estate derived benefit from his legal training and experience; but, as we have observed previously, this in itself can form no basis for peculiar or unusual compensation.

We are not impressed that there was anything peculiarly or unusually difficult in the settlement of this estate. On the contrary, it appears from the record to have been a rather simple matter and one free of peculiar burdens or difficulties. All the assets of the estate were in the form of cash or deposits. No litigation and no disputed claims were involved. The New Jersey attorney was paid a fee of $75 for arranging for the transfer of the funds from New Jersey. The Polish Embassy apparently produced the documentary proof of the relationship of the

distributee to the deceased. It is true that the administrator, through people in New Jersey, learned that the decedent may have had a sister living in Poland, and that this led to the proper identification of the proper beneficiary of the estate. All that was a part of the duty and responsibility of the administrator. 21 Am. Jur., Executors and Administrators, Section 227, page 498.

The final settlement discloses only fourteen items of disbursement in addition to the four items of compensation paid to the administrator. Among the fourteen items, three were for fees paid to three appraisers and three were for premiums for the administrator's bond. Generally speaking, the disbursements represented merely items of cost which are routine and normal in such a situation. The only debt antedating the death was an item of $50 paid to a physician for attending the deceased during his final illness. The commissioner of accounts, as disclosed by both of his reports, was paid a fee of $150 for his services; and, therefore, we must assume that he fully discharged the responsibilities and performed the duties enjoined upon him by law, and that the administrator was relieved of burdens and responsibilities to that extent.

By way of summary, there has not been presented by the record any showing which would, in our judgment, justify peculiar or unusual compensation to the administrator in this case. A commission of five percent on the total receipts would be $537.28. The administrator was paid the aggregate sum of $1,500.69, which was $963.41 in excess of five percent. We regret that the record does not disclose an itemization of expenses claimed by the administrator. We would prefer a more satisfactory basis of guidance in a determination of that question. On the other hand, the final determination of the matters here presented for decision has been prolonged to an inordinate degree and we are impressed by the importance of bringing the case to a final conclusion. It is obvious that the administrator has incurred some expense for which he should be reimbursed. In that area, we, of course, want to be fair to him as well as to the distributee. We believe,

and accordingly the Court now holds, that the administrator should be allowed the sum of $750 as full payment of all compensation and expenses; and that he should be required by the circuit court promptly to refund to the distributee the excess received by him, which is $750.69.

We turn now to the question presented by the failure of the administrator to derive interest from funds belonging to the estate. Code, 1931, 44-6-1, provides that fiduciaries, including administrators, "may, by direction of the circuit court of the county, * * * put out at interest all moneys in their hands which they are or may be lawfully required to retain, * * *; and it shall be the duty of such * * * administrators, * * * in cases where the estates in their hands may be materially benefited thereby, to make application to such circuit court for such direction, and in case they shall neglect so to do they shall be accountable for the interest that might have been made thereby; * * *."

"An administrator pursuing such course as a judicious man, looking alone to his worldly interests, would, under the circumstances, pursue in his own affairs will be justified in so doing. Ordinary care and reasonable diligence are what are required of him." *Harris* v. *Orr*, 46 W. Va. 261, pt. 1 syl., 33 S. E. 257. See also *Tavenner* v. *Baughman*, 129 W. Va. 783, 803, 41 S. E. 2d 703, 714; *Davis* v. *See*, 119 W. Va. 490, 497, 194 S. E. 271, 275; *Windon* v. *Stewart*, 43 W. Va. 711, pt. 3 syl., 28 S. E. 776; 33 C.J.S., Executors and Administrators, Section 184, page 1160. "In determining whether a personal representative should deposit the funds of the estate in a commercial account or a savings account various factors must be considered. Under ordinary circumstances, as, for example, where the funds are to be in his hands for a very short time or where practically all of the funds will be required for the immediate needs of administration, deposit in a commercial account subject to check is proper. On the other hand, where there is a substantial sum in excess of the immediate requirements and such sum is to be held over a period of time which will permit the accrual of interest on a savings bank deposit, he should deposit the funds in a savings ac-

count rather than in a noninterest-bearing commercial account." 33 C.J.S., Executors and Administrators, Section 187, page 1167. See also *Bickers* v. *Shenandoah Valley National Bank*, 201 Va. 257, 110 S. E. 2d 514; Annotation, 18 A. L. R. 2d 1384, 1413; *Taylor* v. *Taylor*, 66 W. Va. 238, pt. 6 syl., 66 S. E. 690.

In holding in his supplemental report that the administrator should not be charged with interest, the commissioner of accounts made the following findings: "Under the evidence as submitted, your Commissioner is of the opinion that the Administrator should not be charged with any failure to invest funds of this estate, for apparently the estate was a simple estate, with three citizens and residents of the United States of America as beneficiaries, until it later appeared that perhaps there was a sole heir and distributee living in Poland, and that the Administrator did promptly settle within a short period of time after legal documents had been furnished to him by H. D. Rollins, Attorney representing the said Aniela Cackowska, establishing her right of distributorship. The Administrator further disclosed that he had discussed the advisability of investing the funds with the Judge of the Circuit Court of Raleigh County, West Virginia, on two occasions, and that it was decided that under the statutes, it would likely not prove beneficial to the estate because of the short period of time to invest the funds. Your Commissioner therefore finds and holds that this exception should be overruled." In addition the administrator testified that he discussed with Gene Foster of the Beckley National Bank the question of the advisability of investing at interest funds belonging to the estate, and that Mr. Foster "said the money for that length of time would not give you any interest—it would have to be here a year, or some such rule."

The fact remains that almost three years elapsed from July 30, 1957, when the administrator was appointed and the matter was referred to the commissioner of accounts, until the commissioner made his original report dated July 2, 1960, which disclosed that the sum of $7,649.17 was due the distributee and which report authorized payment

of that sum to her attorney in her behalf.   It is regrettable that the bulk of the estate was not placed at interest in the meantime.   The record in this respect presents a situation which is by no means commendable.   The commissioner of accounts, nevertheless, has made his findings based upon the testimony taken in his presence.   We are unable to discern from the record when documentary proof of the relationship of the distributee was submitted.   The supplemental report states that the administrator promptly thereafter submitted his accounts to the commissioner.

The brief order of the circuit court, by which it ultimately acted upon the petition and denied a writ of error, does not disclose the reason or basis for such action, but perhaps we must assume that the circuit court thereby concurred in the findings made by the commissioner of accounts.

The findings of fact by a commissioner of accounts, approved by the county court and upheld by the circuit court, will not be disturbed by this court unless against the preponderance of the evidence or plainly wrong. *In re McIntosh's Estate,* 144 W. Va. 583, pt. 2 syl., 109 S. E. 2d 153; *In re:   Estate of H. B. Hauer,* 135 W. Va. 488, pt. 1 syl., 63 S. E. 2d 853.   See also *Fields* v. *West,* 83 W. Va. 128, pt. 3 syl., 97 S. E. 597; *Dearing* v. *Selvey,* 50 W. Va. 4, pt. 1 syl., 40 S. E. 478; *Leach* v. *Buckner,* 19 W. Va. 36, pt. 1 syl. Conversely, of course, such a finding will be reversed if against the preponderance of the evidence or plainly wrong.

We believe the action of the commissioner of accounts in approving disbursements to the administrator in the aggregate sum of $1,500.69 was against the preponderance of the evidence and plainly wrong.   We cannot say that the findings of fact made by the commissioner of accounts on the question relating to interest is contrary to the preponderance of the evidence or plainly wrong.

For reasons stated, the motion to reverse is sustained; the judgment of the circuit court is reversed; and the case is remanded to that court with directions to grant the writ

of error to the action of the county court and thereafter to require Anthony Sparacino in his individual capacity to pay the costs of the proceeding and to pay promptly to Aniela Cackowska, or her attorney, the sum of $750.69.

*Reversed and remanded with directions.*