## CIRCUIT COURT OF ALBEMARLE COUNTY

Robert Playford Boyle, Jr., et al.

v.

Marilyn Q. Boyle et al.

June 16, 1993

Case No. (Chancery) 8571-C

BY JUDGE PAUL M. PEATROSS, JR.

This cause comes before the Court on the following issues:

(1) continued use of the real estate by Marilyn Q. Boyle;

(2) what distributions, if any, she should receive in light of claiming her elective share;

(3) increase, if any, in the family allowance;

(4) exempt property claim; and

(5) claim of estoppel to the widow's claim of a constructive trust.

### Statement of the Facts

On January 12, 1992, Robert P. Boyle died leaving a will which created a trust (the Robert P. Boyle trust), which provided for payment to his widow (respondent) Marilyn Q. Boyle of a monthly stipend and divided his other property among his widow and his children. On July 16, 1992, Mrs. Boyle filed a claim for her elective share of the estate of her late husband, as provided by § 64.1–13 of the Code of Virginia of 1950, as amended.

Petitioners, the Boyle children, have requested that the Court determine the amount and composition of Mrs. Boyle's elective share and

order the Executors to cease all distributions to Mrs. Boyle pending determination of her elective share. They contend that her delay in determining the composition of her elective share is draining the cash resources of the estate necessary for its preservation and maintenance until it can be sold. The executors have paid Mrs. Boyle a $6,000 family allowance and $16,000 in monthly payments of $1,000 (the first $7,000 as provided by the Robert P. Boyle trust, the remainder as advance interest payments on her elective share).

In her Answer and Cross-Bill filed January 19, 1993, Mrs. Boyle joined in Petitioners' prayer that the Court determine the amount and composition of her elective share but requested that the payments made to her by the Executors be continued pending such determination. In Count I of her Cross-Bill, she claimed that the $6,000 family allowance provided by the Executors was insufficient and asked the Court to award her a larger sum. In Count II, she asserted that improvements to and payments on decedent's property were made by herself and by Brecon Stables, Inc., a company owned by Mr. and Mrs. Boyle. Mrs. Boyle contends that this gives both herself and Brecon constructive trust interests in the property and requests that any increase in the value of the property caused by these improvements be given to her aside from her elective share.

On January 27, 1993, Petitioners filed a Demurrer, a Plea in Bar and Estoppel, and a Plea of Nonjoinder, claiming that Mrs. Boyle and Brecon Stables were estopped from asserting a constructive trust, and claiming that the Cross-Bill was deficient in failing to join Brecon Stables as a necessary party. On May 3, 1993, after hearing oral arguments, the Court overruled the Demurrer and the Plea in Bar, joined Brecon as a party to the suit, and ruled that it needed to hear evidence to determine whether or not the Plea in Estoppel should be sustained.

## Questions Presented

1. Whether the Court should direct the Executors to cease all distributions of principal and income to or for the benefit of the widow pending determination of the amount and composition of her elective share?

2. Whether the widow is estopped from asserting her claim of constructive trust on behalf of herself and Brecon Stables, and if not, whether such a constructive trust exists?

## Discussion of Authority

*I. Distributions of principal and income to or for the benefit of a widow should be continued pending determination of her elective share.*

1. Petitioners contend that by claiming an elective share, the widow forfeited the provisions made for her in her will. *First National Bank v. Hughson,* 194 Va. 736 (1953). Petitioner asks that the widow be ordered to repay $7,000 in monthly payments received from the Robert P. Boyle Trust before she claimed her elective share.

As of 1991, the surviving spouse no longer forfeits all provisions made for her in the will upon claiming an elective share and is entitled to receive the property given to her in the will as a starting point in distribution of her elective share. "In determining the elective share, values included in the augmented estate which pass or have passed to the spouse, or would have passed but were disclaimed, are applied first to satisfy the elective share and reduce any contributions due from other recipients of transfers included in the augmented state." Section 64.1–16.2(A) of the Code of Virginia of 1950, as amended.

The *Hughson* case no longer governs, and the widow should be allowed to retain distributions made to her from the Robert P. Boyle Trust according to the terms of the will, as part of her elective share. In other words, her elective share should be one third of decedent's original estate, minus any payments made to her from the time of his death until the satisfaction of the elective share; not one third of what is left of the estate at the time of determination of the elective share.

Continued monthly payments by the Executors after the initial $7,000 are advances on the widow's one third interest from the elective share, not payments from the Trust under the terms of the will. These distributions may be continued in the discretion of the Executors, as long as the estate is not jeopardized and it is reasonable in light of the share the Executors estimate she may receive. "The surviving spouse shall be entitled to interest at the legal rate from the decedent's death to the date of satisfaction of the elective share." Section 64.1–16 of the Code of Virginia of 1950, as amended.

2. It is within the discretion of the Court to award a family allowance greater than the $6,000 limit which the personal representative may grant. Upon proper petition, the Circuit Court "may provide a family allowance either larger or smaller than that which the personal

representative determined or could have determined." Section 64.1–151.4 of the Code of Virginia of 1950, as amended. The Code authorizes the Court to grant an allowance larger than what the personal representative could have provided, thereby implicitly granting the Court discretion to exceed the $6,000 cap imposed on the personal representative. At this time, no evidence has been presented to justify a greater allowance than $6,000.

3. Mrs. Boyle is barred from receiving $3,500 worth of exempt property (furniture, etc.) from the estate due to her failure to claim the exemption within the statutory period. Section 64.1–151.2 of the Code of Virginia of 1950, as amended, provides that "In addition to the family allowance, the surviving spouse of a decedent who was domiciled in this commonwealth is entitled from the estate to value not exceeding $3,500 . . . in household furniture, automobiles, furnishings, appliances, and personal effects." Section 64.1–151.5 of the Code states that "[t]he election to take . . . exempt property . . . may be made within one year from the death of the testator or intestate." The election may be made either in person before the Court or in writing filed at the Court or Clerk's office. Since Mrs. Boyle did not file an exemption within one year, the Court rules that she is not allowed to claim such property as exempt from determination of her elective share.

4. The executors should continue to make mortgage payments on the family residence, but not utility payments. "Until the surviving spouse's rights in the principal family residence have been determined . . . where the spouse is claiming an elective share . . . the surviving spouse may hold, occupy and enjoy the principal family residence and curtilage without charge for rent, repairs, taxes or insurance." Section 64.1–16.4 of the Code of Virginia of 1950, as amended. Petitioner asserts that since this statute does not provide that an executor should pay mortgage and utilities, these expenses should be borne by the widow. Mrs. Boyle cites *Harrison on Wills and Administration* in response,

> It is the duty of the personal representative to preserve against loss, with reasonable diligence, the assets of the estate which have come into his hands. An executor or administrator of the estate of a deceased person is under a duty to take custody of the estate and administer it in such a manner as to protect it for ultimate distribution. *In re Estate of Lapinsky v. Saracino*, 148 W. Va. 38, 132 S.E.2d 765 (1963).

Thomas W. Harrison, *Wills and Administration*, § 482 at 10 (3rd ed. 1989).

The widow asserts that this means the Executors should be responsible for mortgage and utility payments as well as repairs, taxes and insurance on the residence. This authority supports the executors' continued payment of the mortgage, since their duty to preserve the estate for ultimate distribution means they must make reasonable efforts to prevent the property from going into foreclosure. There is no reason, however, why the estate (and thus the other beneficiaries) should assume Mrs. Boyle's personal responsibility to pay for utilities from which she alone benefits. Utilities are necessary for the widow's personal enjoyment of the residence, not for preservation of the estate for future distribution, and therefore not the responsibility of the executors.

5. Petitioner's request that distributions to the widow cease because she has unduly delayed in claiming and determining her elective share is untenable. Mrs. Boyle filed her claim within the statutory period (six months from the qualification of the executors), and determination of the elective share is the responsibility of the executors, not the surviving spouse.

II. *Whether the widow is estopped from asserting her claim of a constructive trust on behalf of herself and Brecon Stables, and if not, whether such a constructive trust exists*

Since Petitioners have provided no evidence or legal authority for their claim that Mrs. Boyle is estopped, it will be necessary to hear evidence on the issue before any determination can be reached.